KAISER-FRAZER CORPORATION, a corporation of the State of Nevada, Plaintiff, v. CYRUS S. EATON and WILLIAM R. DALEY, Defendants.

(*January* 3, 1952.)

HERRMANN, J., sitting.

S. *Samuel Arsht* (of Morris, Steel, Nichols and Arsht) for Plaintiff.

*William Prickett*, appearing specially for defendant, William R. Daley.

*John J. Morris, Jr.*, (of Hering, Morris, James and Hitchens), appearing specially for defendant, Cyrus S. Eaton.

Superior Court for New Castle County, No. 646, Civil Action, 1951.

HERRMANN, J.:

The pending motions present two ultimate questions for decision:

1. Where there is a valid attachment of some property of the defendant in an action begun by writ of foreign attachment, will the effectiveness of a garnishment of other property, rights or credits of the defendant be determined upon motion made under special appearance for the purpose of challenging the jurisdiction of the Court?

2. In an action commenced by writ of foreign attachment, may a defendant be permitted to enter a special appearance for the purpose of defending the action on its merits with liability limited to the value of property of the defendant validly attached or garnished?

The plaintiff is a corporatoin of the State of Nevada. The defendants reside in Ohio. On August 1, 1951, the plaintiff filed a complaint asserting an action in tort against the defendants. Simultaneously, the plaintiff filed the affidavit required by the foreign attachment statute,[1] together with a praecipe requesting the issuance of a writ of foreign attachment. The writ was issued on August 1, 1951 and was served by the Sheriff upon Otis & Co., a Delaware corporation. On August 2, 1951, pursuant to 1935 *Code* 4633, the plaintiff's attachment bond was approved by the

---

[1]The foreign attachment statutes of Delaware appear at 1935 *Code* 4630, *et seq.*

Court and filed. The Sheriff's return states that on August 1, 1951, pursuant to the writ, he attached all the shares of stock of Otis & Co. owned or held by the defendants. The return also states that the Sheriff summoned Otis & Co., as garnishee of the defendants, to appear and answer as commanded by the writ. There was attached to the return, and made a part thereof, the certificate of the resident agent of Otis & Co. showing that, as of the date of the attachment, the defendant Eaton held or owned 1,180 shares of the common stock of that corporation, and that the defendant Daley held or owned 1,100 shares of that stock.

On August 21, 1951, Otis & Co. appeared pursuant to the command of the writ of foreign attachment served upon it as garnishee of the defendants. The plaintiff elected[2] to take the garnishee's special declaration which asserted, in substance, that as of August 16, 1951, (1) Otis & Co. was indebted to the defendant Eaton in the sum of $79,145.02 and to the defendant Daley in the sum of $52,878.37; and (2) Otis & Co. was obligated to the defendant Eaton in the sum of $20,450 and to the defendant Daley in the sum of $600, these obligations being represented by notes due on January 1, 1952; and (3) pursuant to certain subordination agreements which expired on December 31, 1951, the defendant Eaton had deposited with Otis & Co. $893,814.10 in cash, together with certain securities, and the defendant Daley had deposited $601,411.89 in cash, together with certain securities. The subordination agreements were not made a part of the record by the garnishee's declaration. On November 27, 1951, Otis & Co. filed a supplement to its special declaration as garnishee asserting that, subsequent to the filing

---

[2]By virtue of 1935 *Code* 4634 and 4615, the plaintiff in an action commenced by foreign attachment may elect to take a garnishee's answer, plea of *nulla bona*, or special declaration. Upon acceptance of an answer, asserting that the garnishee has nothing in his hands liable to attachment, the garnishee is discharged; upon the entry of a plea of *nulla bona*, an issue is framed for trial as to the extent to which the garnishee shall be charged; upon the acceptance of a special declaration, judgment is entered thereupon by the Court "according to law". See *Woolley, Del. Pract.*, § 1188, *et seq.*

of its special declaration on August 21, 1951, Otis & Co. had filed a petition for reorganization, under Chapter X of the *Bankruptcy Act*, 11 *U. S. C. A.* § 701 *et seq.*, in the United States District Court for the Northern District of Ohio; and that on August 24, 1951, that Court had entered an order referring the matter to a Special Master and staying the activities of persons involved in actions or suits against Otis & Co. or its property in other courts.[3]

Thereafter, William Prickett, Esquire, and John J. Morris, Jr., Esquire, filed applications for leave to appear specially for the defendants for the purpose of challenging the jurisdiction of this Court on the ground that the writ, the return, and the attachment or garnishment were insufficient and ineffective. Simultaneously, alternative motions were made on behalf of the defendants for leave to appear specially to defend the action on its merits with liability limited to the value of property of the defendants validly attached or garnished. Under special

---

[3]The order of the Reorganization Court contained the usual provisions for temporary stay of actions and suits against the debtor and its property. On December 28, 1951, the moving parties filed a certified copy of an order of the Reorganization Court dated December 12, 1951, in which the petition in the Chapter X proceedings was approved and a trustee was appointed. On December 31, 1951, the moving parties filed a certified copy of an amended order of the Reorganization Court, dated December 17, 1951. The manner in which the various orders of the Reorganization Court have been brought to the attention of this Court is considered improper. For the purpose of this opinion, however, this Court takes cognizance of the provisions of the most recent order of the Reorganization Court, dated December 17, 1951, which direct that, until further order of that Court, all persons and corporations "be and they hereby are * * * enjoined and stayed from commencing or continuing any action at law * * * against said Debtor or its estate or property in any court, or for the purpose of impounding or taking possession of or interfering with or enforcing a lien upon any property owned by or in the possession of the said Debtor, * * * and from doing any act or thing whatsoever to interfere with the possession or management by said Debtor of the property and assets of the within estate, or to interfere in any manner * * * with the exclusive jurisdiction of this Court over said Debtor and over the property and assets of its estate; * * *."

appearances for which leave was reluctantly[4] granted, motions have been filed to quash the writ, set aside the Sheriff's return, and dissolve the garnishment or attachment. Affidavits have been filed in support of those motions.

I shall consider the last-mentioned motions first. It appears, in the final analysis, that no question is raised by these motions regarding the regularity of the writ or of the return. It appears also that the validity of the attachment of the defendants' stock in Otis & Co. is conceded. It is manifest, therefore, that the writ may not be quashed, the return may not be set aside, and the attachment may not be dissolved. In an action begun by writ of foreign attachment, an attachment, valid as to some property of the defendant, will not be dissolved, either in whole or in part, upon motion of this nature. *S. Catanzaro & Sons, Inc. v. Brown,* 278 *Pa.* 548, 123 *A.* 491; *McCloskey v. Northdale Woolen Mills,* 296 *Pa.* 265, 145 *A.* 846.

The motions made on behalf of the defendants are directed solely to the question of the effectiveness of the garnishment of property, rights and credits of the defendants in the hands of Otis & Co. as garnishee. The contentions made on behalf of the defendants may be summarized as follows:

1. The garnishment was wholly ineffective because: (a) The order of the Reorganization Court reprives this Court of jurisdiction over property, rights and credits in the possession of Otis & Co., as garnishee; (b) the garnishee's obligations and indebtedness to the defendants were not to be performed or paid in Delaware; and (c) the garnishee was not subject to garnishment because it was not doing business in Delaware.

---

[4]Without showing of cause, the applications for leave to enter special appearances and the related motions were brought on before this Court just 11 days, exclusive of Sundays and holidays, before the day on which default judgments for want of appearances would become final. Motions to dissolve attachments or garnishments for want of jurisdiction are in the nature of dilatory pleas. The need for a rule of court or statutory amendment, requiring diligence in the presentation of such applications, is indicated.

2. The garnishment was partially ineffective because certain property, rights and credits: (a) Were not within the State of Delaware; (b) were not yet due; and (c) were conditional.

These contentions are based upon the special declaration of the garnishee, as supplemented, and upon affidavits filed in support of the motions made on behalf of the defendants.

It is clear from the foregoing statement of contentions that the moving parties are now raising this question: Should the garnishee be discharged and, if not, to what extent should it be charged? Otherwise stated, the question now being raised on behalf of the defendants is whether the plaintiff may have a judgment against the garnishee and, if so, the extent of such judgment. These are not proper questions for determination at this stage of this case. The only question properly before me at this time is whether this Court has jurisdiction in the action begun by the writ of foreign attachment.[5]

Jurisdiction in a case of this kind is acquired when the plaintiff files a proper affidavit and bond, when the writ is properly issued and the return is properly made, and when property of the non-resident defendant is properly attached or garnished within the territorial limits of the jurisdiction of this Court. *Woolley, Del. Pract.*, § 1268, *et seq*. No irregularity has been shown as to the affidavits, bond, writ or return. The validity of the attachment of the defendant's stock in Otis & Co. is conceded. There are present here a plaintiff, a cause of action, a *res* and non-resident defendants. Consequently, the jurisdictional requirements are fulfilled. *Blaustein v. Standard Oil Company*, 5 *Terry* 145, 162, 56 *A*. 2d 772, 779.

The defendants must await a later stage of this case for the determination of their contentions regarding the effectiveness of

---

[5]The effectiveness of a garnishment will, of necessity, be considered upon motion made under special appearance to attack the jurisdiction of the Court where there is no other *res* to support jurisdiction. See *Eastern Union Co. v. Moffatt Tunnel Improvement Dist.*, 6 *W. W. Harr*. 488, 178 *A*. 864.

the garnishment and the extent of the judgment, if any, which may be rendered against the garnishee in favor of the plaintiff. The determination of what, if anything, the plaintiff has taken under its garnishment, i. e., the extent of the judgment to be entered against the garnishee, is not ordinarily made until after final judgment in a specific amount is entered against the defendants in the principal action. 2 *Shinn, Attachment and Garnishment*, § 681. At the appropriate time, the garnishee or its trustee in reorganization may be heard as to the judgment which may be properly entered against it, "according to law". The defendants will be entitled to be heard at that time as to the judgment which may be entered against the garnishee. 2 *Shinn, Attachment and Garnishment*, § 664. Then, too, the plaintiff may have a fairer opportunity to meet the attacks upon the effectiveness of the garnishment, 2 *Shinn, Attachment and Garnishment*, § 651; and this Court may have adequate time to give due consideration to the numerous and substantial questions presented. In the meanwhile, the garnishment is but a "warning" to the garnishee that it must not deliver to the defendants any property or money of the defendants in its hands. *Woolley, Del Pract.*, § 1188. No lien has been created by the garnishment, and there is no imminent interference with the garnishee's possession and control. 2 *Shinn, Attachment and Garnishment*, § 612; *Woolley, Del. Pract.*, §§ 1189, 1193.

This Court is not unmindful of the recognition which is to be accorded to orders entered by the United States District Court for the Northern District of Ohio in the pending Chapter X proceedings. I am of the opinion, however, that denial of the pending motions to dissolve the garnishment violates neither the provisions of those orders nor the spirit of the rule of comity upon which the extra-territorial jurisdiction of the Reorganization Court largely depends. *Finletter, The Law of Bankruptcy Reorganization, p.* 121. The garnishment being but a warning and creating no lien, the refusal of this Court to dissolve the garnishment now does not interfere with the jurisdiction of the

Reorganization Court over the assets of Otis & Co. Indeed, even though judgment be entered against the garnishee after judgment against the defendants in the principal action, a lien would not be created as to the garnishee until execution process issued. 2 *Shinn, Attachment and Garnishment*, § 695. The parties are not yet close to that stage of the case. If and when that time comes, there may be some conflict between the jurisdiction of this Court and the jurisdiction of the Reorganization Court. Until then, however, I can conceive of no reason why the garnishment against Otis & Co. must be dissolved now upon the ground of the paramount jurisdiction of the Reorganization Court over its estate.

■ The moving parties contend that the jurisdiction of this Court, over the property, rights and credits garnished, was divested by the exclusive jurisdiction of the Reorganization Court. I cannot agree. The jurisdiction of that Court attached as of August 24, 1951, the date of the filing of the petition. The garnishment was laid on August 1, 1951. The Reorganization Court took jurisdiction over the assets in the status created by local law. *Finletter, The Law of Bankruptcy Reorganization, pp.* 154, 346. This Court's jurisdiction in the garnishment proceeding has not been divested by the Chapter X proceeding. *Hartough v. Safeway Lines, Inc.*, 288 *Mich.* 471, 285 *N. W.* 561.

For the reasons stated, the motions made on behalf of the defendants to quash the writ, to set aside the return, and to vacate or dissolve the garnishment or attachment, will be denied.

There remain for disposition the alternative motions made on behalf of the defendants that they be granted leave to enter special appearances to defend the action on its merits with liability limited to the value of property validly attached or garnished. It is urged that this Court has the power to permit the defendants to enter special appearances for the purpose of "protecting any interest" which they may have in "the property, rights or credits attached or garnished herein, to serve and file

an answer to the Plaintiff's Complaint herein * * * and to further move that the scope of the hearing in this case on the merits, and the satisfaction of any judgment * * * be limited to the property, rights and credits attached or garnished herein". In short, the defendants urge that they be permitted to defend the action on the merits without exposing themselves to *in personam* judgments. In support of this contention, principal reliance is placed upon *Cheshire National Bank v. Jaynes*, 224 *Mass*. 14, 112 *N. E.* 500, and *Salmon Falls Mfg. Co. v. Midland Tire & Rubber Co.*, (6 *Cir.*) 285 *F*. 214. I find the cited cases to be forceful for logic of reasoning and fairness of result. *Cf*. 2 *Moore's Fed. Pract.* (2d Ed.) p. 2264. Those cases are not applicable, however, because the foreign attachment statutes therein considered did not contain the controlling provisions of our Statute.

It is provided at 1935 *Code* 4634 that, in actions commenced by foreign attachment, "Appearance may be entered * * * in the same manner as appearances are entered in cases commenced by summons". The Statute further provides that " In all cases where the defendant has appeared, like proceedings shall be had as in cases begun by summons. * * *". The Statute also refers to " * * * the satisfaction of any personal judgment secured against a defendant so entering an appearance * * *."

In cases commenced by summons, only two kinds of appearances are recognized. A special appearance may be entered for the purpose of raising jurisdictional objections[6]. *Syracuse Trust Co. v. Keller*, 5 *W. W. Harr.* 304, 165 *A*. 327; *Woolley, Del. Pract.*, § 227. Compare *Blaustein v. Standard Oil Co.*,

---

[6]It appears that, under Rule 12(b), the ancient distinction between special and general appearances is in the process of being abolished in summons cases. See 2 *Moore's Fed. Pract.*, p. 2262; *Orange Theatre Corp. v. Rayherstz Amusement Corp.*, (3 *Cir.*) 139 *F*. 2d 871.

In cases commenced by summons, appearance is entered by service and filing of notice thereof, or by the filing of a motion or pleading "purporting to be responsive to or affecting the complaint". Rule 5(aa1).

*etc.,* 4 *Terry* 516, 51 *A.* 2d 568, 572. The only other kind of appearance recognized in cases begun by summons is a general appearance which is a "simple and absolute submission to the jurisdiction of the Court", subjecting the defendant to an *in personam* judgment. *Woolley, Del. Pract.,* § 230. Moreover, our Supreme Court has held that the "appearance" contemplated by our foreign attachment statute is a general appearance. *Blaustein v. Standard Oil Co., etc.,* 4 *Terry* 516, 51 *A.* 2d 568, 570. This Court had previously adopted the same view. *McLaughlin v. Bahre,* 5 *W. W. Harr.* 446, 450, 166 *A.* 800.

The meaning of the provisions of 1935 *Code* 4634, regarding the type of appearance to be entered by defendants in actions begun by foreign attachment, is plain and unambiguous. There is no room for enlargement by statutory interpretation. While the power to fix the meaning of a statute, in case of doubt or ambiguity, has been confided in the courts, that power does not exist in the absence of ambiguity. The granting of the request made on behalf of the defendants would, I think, transcend the type of interstitial legislating beyond which a court may not properly go. The innovation suggested is contrary to the long established concept that, after appearance by the defendant, an action commenced by foreign attachment becomes an *in personam* proceeding of substantially the same nature and scope as it would have been if commensed by summons. *Woolley, Del. Pract.,* §§ 1294, 1295. It is my opinion that any modification of that concept must await legislative action.

Accordingly, the motions made on behalf of the defendants for leave to enter special appearances to defend on the merits with limited liability, must be denied.

An order may be submitted on notice.