KATHARINE R. BRAINARD, Executrix under the Last Will and Testament of Millar Brainard, deceased, and SAMUEL VANCE, JR., Plaintiffs, v. WARD M. CANADAY, Defendant.

(*March* 30, 1955.)

TERRY, J., sitting.

*James R. Morford* (of the firm of Morford and Bennethum) for the plaintiffs.

*Edwin D. Steel, Jr.* (of the firm of Morris, Steel, Nichols and Arsht) for the defendant.

Superior Court for New Castle County, No. 1246, Civil Action, 1953.

TERRY, J.:

This action originated as a cause of action in foreign attachment in pursuance to the provisions of Section 3506, Title 10, *Delaware Code,* 1953. The complaint with the required affidavit was filed on December 22, 1953. A writ of foreign attachment was issued and was served on the same day by the Sheriff upon The Corporation Trust Company, the corporate resident agent of two Delaware corporations, Empire Securities, Inc. and Willys Overland Motors, Inc.

On January 11, 1954, The Corporation Trust Company, resident agent, delivered to the Sheriff a certificate designating the number of shares of stock of Empire Securities, Inc. registered on its books in the name of Ward M. Canaday on December 22, 1953, and stating that no shares of stock of Willys Overland Motors, Inc. were registered in the name of Ward M. Canaday on December 22, 1953, as appeared by the books of Willys Overland Motors, Inc. This certificate is attached to the Sheriff's return and states in part as follows:

"In making this report The Corporation Trust Company makes no concession as to the validity of the attachment herein."

The Sheriff on the same day, January 11, 1954, filed his return of process with the Prothonotary. The return stated in part that the Sheriff had attached all of the shares of stock in Empire Securities, Inc., a Delaware Corporation, belonging to the defendant "by serving the within writ personally upon and leaving a true copy thereof, together with a copy of the complaint, with the Assistant Secretary of The Corporation Trust Company, resident agent for Empire Securities, Inc., on December 22, 1953." By order of the Court, dated April 21, 1954, leave to amend the original return was granted the Sheriff, and the original return was amended to state that all of the shares of stock in Empire Securities, Inc. belonging to the defendant had been attached "by serving the within writ personally upon and leaving a duplicate original thereof signed by the Prothonotary of New Castle County, with the official seal of the Superior Court of New Castle County and State of Delaware impressed thereon, together with a copy of the complaint, with the Assistant Secretary of The Corporation Trust Company on December 22, 1953."

On April 9, 1954, defendant, by his counsel, petitioned the Superior Court "for permission to appear specially for Ward M. Canaday solely for the purpose of moving to quash the writ of foreign attachment, to set aside the Sheriff's return, and to dissolve the purported attachment made under the writ." The

petition was never determined by the Court. No special appearance was entered by the defendant.

The defendant not having appeared during the first term (January Term), the plaintiffs on April 21, 1954, (second term) filed with the Prothonotary a written direction for judgment in compliance with the provisions of Section 3526, Title 10, *Delaware Code*, 1953, and Rule 55 of this Court.[1]

The March Term (second term) of the Superior Court would in due course have adjourned not later than May 3, 1954, immediately prior to the convening of the May Term, 1954. Upon the adjournment of the March Term the judgment by default would have been final pursuant to the direction and the Rule.

On April 26, 1954, the defendant, by counsel, filed with the Prothonotary the following direction:

"Please enter forthwith my general appearance on behalf of Ward M. Canaday, defendant in the above action."

Copy of notice of appearance was served by the defendant on the same day upon counsel for the plaintiffs:

"You are hereby notified that I am today filing the above direction to the Prothonotary to enter my general appearance for Ward M. Canaday, defendant in the above action."

On April 27, 1954, defendant's counsel filed a motion to vacate the judgment which the Prothonotary had entered pursuant to plaintiff's direction as of April 21, 1954.[2]

On April 29, 1954, Judge Herrmann entered an order on motion of defendant's counsel, amending the judgment to read as follows:

---

[1]The filing of this direction was pursuant to Court order of April 21, 1954, vacating a prior order for default judgment dated March 23, 1954, which while conforming with the former practice in this Court did not conform in counsel's view with the practice envisaged by Rule 55.

[2]The Prothonotary had written the judgment up in the form of a final judgment rather than a judgment *nisi* as directed.

"And now to wit this 26th day of April, A.D. 1954, judgment by default, pursuant to Rule 55(1) be entered in favor of the plaintiffs and against the defendant in the sum of $567,000.00, plus 6% from January 1, 1953 amounting to $44,982.00, besides costs, etc., such judgment to become final upon the adjournment of the March Term 1954 of the Superior Court in and for New Castle County, in the event that the defendant shall not have entered a general appearance in this cause at the time of the adjournment of the March Term, 1954, of the Superior Court."

The order directed the Prothonotary to enter in the Judgment Docket, immediately following the judgment so amended and modified, the following quotation:

"The above judgment is entered *nunc pro tunc* as of 9:23 a.m. Eastern Standard Time, April 26, 1954, pursuant to order of the Superior Court, dated April 29, 1954."

On April 30, 1954, during the March Term (second term) of the Superior Court the defendant filed an answer to the complaint signed by his counsel, who theretofore on April 26, 1954, had entered a general appearance for him, as above indicated.

The claim asserted by the complaint embraces two causes of action. It is for compensation for services, as brokers, rendered by the plaintiffs to and on behalf of the defendant in bringing about the sale of defendant's controlling stock interest in Willys Overland Motors, Inc. The first cause of action is upon the theory of express contract. The second cause of action is a claim on the *quantum meruit*, or implied contract.

The answer filed by the defendant in numbered paragraphs 1 to 17, inclusive, consists merely of admissions, denials, and statements of no knowledge of the facts alleged in the corresponding paragraphs of the complaint.

Under paragraphs 18, 19, 20, and 21 of the answer the defendant has set forth certain affirmative defenses. Without attempting to paraphrase the substance set forth under these defenses, I shall quote them as they appear in the answer.

### "First Affirmative Defense to the First
### and Second Causes of Action

"18. Since defendant resided outside of the State of Delaware, simultaneously with the institution of the action plaintiffs caused a writ of foreign attachment to be issued as a means of compelling the defendant to appear in the cause. Although the return of the writ executed by the sheriff states that on December 22, 1953 he attached all of the shares of stock in Empire Securities, Inc., a Delaware corporation, with all the rights thereto belonging, or any option to acquire such shares, or any rights or interests in such shares, of the defendant herein, and the sheriff has attached to his return a certificate of The Corporation Trust Company, resident agent for Empire Securities, Inc., certifying that on December 22, 1953, the defendant was the registered owner of 588.7 shares of common stock of Empire Securities, Inc., the fact is that no shares of stock of Empire Securities, Inc., a Delaware corporation, or any rights thereto belonging, or any option to acquire such shares, or any rights or interest in such shares, owned by the defendant have been validly attached, since no certified copy of a writ of attachment was left with the president, cashier, treasurer, any director, or the resident agent of Empire Securities, Inc., as required by §324(b) of Title 8 of the *Code of* 1953.

"19. By virtue whereof the process by which the aforementioned property of the defendant was purportedly attached was insufficient to subject said property to the jurisdiction of this Court, and hence was an illegal, and improper means of compelling an appearance by defendant.

### "Second Affirmative Defense to the First
### and Second Causes of Action

"20. Defendant realleges and incorporates herein by reference the allegations of paragraph 18 hereof.

"21. By virtue whereof no valid or proper jurisdiction over the person of the defendant has been acquired, since defendant

has been wrongfully and illegally coerced into appearing in this Court to protect and defend himself and his property against the aforementioned [purportedly] invalid attachment, and in order to obtain a determination of the invalidity thereof under pain of suffering a default judgment and resultant sale of said property in the event of his failure to so appear.

"Wherefore, defendant prays that the action be dismissed with costs against plaintiffs."

The defendant has moved under Rule 12(d) for this Court to hear and determine before trial the first and second affirmative defenses in his answer. The affirmative defenses so pleaded are (1) lack of jurisdiction over the person, and (2) insufficiency of process.

Plaintiffs resist a preliminary hearing and determination of the jurisdictional defenses upon two grounds: (1) that the affirmative defenses are legally insufficient, and, therefore, no issue exists to be tried before trial, and (2) that the Court should act on its own initiative under Rule 12(f) and strike the jurisdictional defenses because of their asserted legal insufficiency. Plaintiffs' counsel takes the position that the sufficiency in law of the affirmative defenses so pleaded may readily be disposed of by the Trial Judge without the necessity of a preliminary hearing and determination thereof.

It is clear to me that there should be a determination of the affirmative defenses prior to a protracted trial on the merits.

In accordance with this conclusion, I entered an order setting a date for the filing of briefs and oral argument in relation to the determination before trial of the legality and sufficiency of the affirmative defenses as pleaded.

The questions involved are as follows: (1) Has the defendant waived his right to challenge the validity of the process and the jurisdiction of the Court over him by entering a general appearance and filing an answer, which included both jurisdictional defenses and defenses addressed to the merits? (2) Were

the shares of stock of the defendant validly attached by the Sheriff leaving with the resident agent an alleged "duplicate original" of the writ of attachment? (3) Was defendant's right to attack the attachment waived by the resident agent delivering to the Sheriff the certificate designating the shares registered in the name of the defendant? A consideration and discussion of the first question necessitates the setting forth of certain statutes, together with certain rules of this Court.

10 *Del. C.* § 3506 provides:

"A writ of foreign attachment may be issued against any individual not an inhabitant of this State, after a return to a summons or capias, issued and delivered to the sheriff or coroner, ten days before the return thereof, showing that the defendant cannot be found, and proof, satisfactory to the court, of the cause of action; or upon affidavit made by the plaintiff or some other credible person and filed with the Prothonotary, that the defendant resides out of the State, and is justly indebted to the plaintiff in a sum exceeding $50. Where there are two or more defendants, one a resident of the State but without available means to pay the plaintiff's claim, the fact may be so stated in such affidavit, and the attachment thereon may issue against the non-resident defendant or defendants with the same effect as if such non-resident defendant or defendants was or were the only defendant or defendants in the cause."

10 *Del. C.* § 3526 provides in part:

"Judgment shall be given for the plaintiff in the attachment the second term after issuing the writ, unless, if the action was commenced by writ of foreign attachment, the defendant enters his appearance in the same manner as appearances are entered in cases commenced by summons * * *."

10 *Del. C.* § 3531 provides in part:

"Appearance may be entered at any time before the expiration of the second term after the issuance of the writ of foreign attachment in the same manner as appearances are entered in

cases commenced by summons. * * * In all cases where the defendant has appeared, like proceedings shall be had as in cases begun by summons, provided that the lien upon the property seized under the writ of foreign attachment shall in no respect be disturbed or affected by. the entry of such an appearance * * *."

10 *Del. C.* § 561 provides:

"(a) The judges of the Superior Court, or a majority of them, may, from time to time, adopt and promulgate general rules which prescribe, establish and regulate the form, issuance and return of process and writs, the form and system of pleading, and all other practice and procedure with respect to the commencement, trial, hearing and determination of· civil actions in the Superior Court.

"(b) Such rules shall be for the purpose of securing the just and, so far as possible, the speedy and inexpensive determination of every such action. The rules shall not abridge, enlarge or modify any substantive right of any party, and they shall preserve the right of trial by jury as at common law and as declared by the statutes and Constitution of this State.

"(c) The rules so adopted and promulgated, and all amendments thereof, shall, after they have taken effect, supersede all statutory provisions in conflict or inconsistent therewith.

"(d) Any inconsistency or conflict between any rule promulgated under the authority of this section or prior law, and any of the provisions of this Code or other statute of this State dealing with practice or procedure in the Superior Court, shall be resolved in favor of such rule of court. Nothing in this Code, anything therein to the contrary notwithstanding, shall in any way limit, supersede or repeal any rule heretofore promulgated governing practice or procedure in civil actions in the Superior Court.

"(e) As used in this section, the phrase 'civil actions in the Superior Court' includes proceedings of every kind or character

within the jurisdiction of that Court except criminal proceedings."

Rule 1 of this Court provides:

"These rules shall govern the procedure in the Superior Court of the State of Delaware with the exceptions stated in Rule 81. They shall be construed to secure the just, speedy and inexpensive determination of every proceeding."

Rule 81 of this Court provides:

"In the following matters the procedure shall conform to these rules so far as practicable and to the extent that this will not contravene any applicable statute; otherwise, the procedure in such matters shall remain as heretofore: * * *." (Foreign Attachment not included.)

Rule 12(b) of this Court provides:

"(b) Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counter claim, crossclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join an indispensable party. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, he may assert at the trial any defense in law or fact to that claim for relief. If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated

as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

Preliminary to any decision upon this question, it should be noted that the rules of procedure governing the civil practice in this Court until January 1, 1948, were those of the common law, except as modified or changed by statute, or modified or changed under the rule making power of this Court. On July 1, 1947, in order to secure a just, speedy and inexpensive determination of every proceeding, the Chief Justice and Associate Judges of this State adopted and promulgated new rules of civil procedure to take effect January 1, 1948. The new rules are comparable to the new rules of Federal Procedure.

The function and purpose of foreign attachment is to obtain the appearance of the defendant. *Hitchens, Inc. v. Phillips Packing Co.*, 3 *Terry* 393, 35 *A.* 2d 502; *Bellah v. Hilles*, 2 *Penn.* (18 *Del.*) 34, 43 *A.* 89; *Wells & Sappington v. Schreve's Adm'r*, 2 *Houst* (7 *Del.*) 329. Prior to January 1, 1948, I find a great body of law in this State enunciating the principle that whenever a defendant in an action instituted by process of foreign attachment voluntarily appears in Court within the time and manner prescribed by law, the process has performed its office and is at an end for the purposes of the case in which it was issued, for the action then becomes an action *in personam* and assumes all the qualities and characteristics of such an action, and is to be prosecuted and conducted in all respects the same as if the defendant had been served with process of summons. *Wooley on Delaware Practice*, Sec. 1294; *Wells & Sappington v. Shreve's Adm'r*, 2 *Houst.* 329; *Bellah v. Hilles*, 2 *Penn.* 34. The appearance of the defendant as contemplated under the statute is a general appearance, and when entered is a simple and absolute submission by the defendant to the jurisdiction of the Court subjecting the defendant to an *in personam* judgment. *Wooley on Delaware Practice*, Sec. 230; *Blaustein v. Standard Oil Co.*, 4 *Terry* 516, 51 *A.* 2d 568; *Omnium*

*De Participations Industries De Luxe (S. A.) v. Spoturno,* 9
*W. W. Harr.* 100, 196 *A.* 194; *Kaiser-Frazier Corp. v. Eaton,* 7
*Terry* 509, 85 *A.* 2d 752. Thus, in summarizing it is evident that
prior to January 1, 1948, the effective date of our new rules of
civil procedure, a defendant in a foreign attachment action in
order to forestall a final judgment being entered against him
at the end of the second term had to enter his general appear-
ance, which when entered constituted an absolute submission to
the jurisdiction of the Court subjecting him to an *in personam*
judgment. Therefore, if the present action had been commenced
under our old rules of civil procedure, the defendant upon en-
tering his general appearance would not have been able to attack
the Court's jurisdiction over his person, as by his appearance he
would have admitted that proper steps had been taken to bring
him properly before the Court.

Now I reach the question as to whether or not the defend-
ant has by reason of entering his general appearance and filing
his answer to the merits in the present action completely sub-
mitted himself to the jurisdiction subjecting him to an *in per-
sonam* judgment, or may he under his appearance raise as an
affirmative defense in his answer the lack of jurisdiction over his
person by reason of alleged defects in the service of process in
the original attachment action? As to this question the parties
are in complete disagreement. Plaintiffs' counsel concedes that
by a gradual evolutionary process by judicial decision since the
adoption of the Federal Rules of Civil Procedure in 1938 the
trend has been for removal of the traditional distinction between
a general and a special appearance in cases commenced by sum-
mons, but urges that no such trend or process exists under the
Federal Rules in cases commenced by an *in rem* process of at-
tachment, for the reason that there is no mesne process of
attachment in the field of federal jurisprudence.[3] It is urged
that the distinction between a special and a general appearance

---

[3] See Federal Proceedings in Admiralty.

in this State in a foreign attachment action can only be changed by legislative direction, *Kaiser-Frazier Corp. v. Eaton, supra,* and that the defendant by entering his general appearance and by filing his answer to the merits has completely submitted himself to the *in personam* jurisdiction of this Court, thereby subjecting himself to an *in personam* judgment, and in so doing has waived such jurisdictional questions as indicated under the two affirmative defenses[4] as set forth in his answer. Otherwise, the plaintiffs have a default judgment in final form pursuant to the Court's order of April 29, 1954.

Defendant contends that our new rules of civil procedure, effective January 1, 1948, were adopted and promulgated under authority of the rule making power of this Court, Title 10, § 561, *Code of* 1953, and when so adopted, and after their effective date, supersede all statutory provisions in conflict or inconsistent therewith. It is contended that the new rules apply to all actions commenced in this Court, with the exceptions stated in Rule 81 (Foreign Attachment not included). The defendant takes the position that the entry of his apperance merely converted the action from one *in rem* into one *in personam,* and from the time of the entry of his apperance the procedural aspects of the case have been the same as if the action had been one commenced by summons. Therefore, he may invoke any or all of a number of defenses; that is, to the merits, or otherwise, as indicated under the provisions of Rule 12(b) of this Court. It is urged that the designation of the defendant's appearance as a general appearance is of no import, as the age old distinction between a special and a general appearance has been abolished under our new rules of civil procedure. This contention is premised upon the interpretation given to Rule 12(b) of the Federal Rules of Procedure, 28 *U. S. C. A.* (Comparable to our Rule 12(b). *Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 3 *Cir.,* 139 *F.* 2d 871; *Investors Royalty Co., Inc. v. Market Trend Survey, Inc.,* 10 *Cir.,* 206 *F.* 2d 108; *Blank v. Bitker,* 7

---

[4]Rule 12(b) of this Court.

Cir., 135 F. 2d 962; *Kauffman v. United States*, D. C., 35 F. Supp. 900; *Olshansky v. Thyer Mfg. Corp.*, D. C., 13 F. R. D. 227; *Fahey v. O'Melveny & Myers*, 9 Cir., 200 F. 2d 420; *Shall v. Henry*, 7 Cir., 211 F. 2d 226; *Hook & Ackerman v. Hirsh*, D. C., 98 F. Supp. 477; *Fauchier v. McNeil Const. Co.*, D. C., 84 F. Supp. 574; *Untersinger v. United States*, 2 Cir., 172 F. 2d 298; *Thorne, Neale & Co. v. Coe*, D. C., 3 F. R. D. 259; *C. J. Wieland & Son Dairy Products Co. v. Wickard*, D. C., 4 F. R. D. 250; 2 *Moore Fed. Practice*, 2nd Ed. (*P.P.* 2262, 2263) ; *Coopersmith v. Stein*, D. C., 14 F. R. D. 354.

It is argued that our statute simply provides that in a foreign attachment action judgment shall be given for the plaintiff at the second term, unless the defendant appears generally. The defendant has so appeared, and as a consequence no default judgment has been entered. Thus, it is said that this case should proceed as if it had been brought by summons subject to the provisions of Rule 12(b) of this Court, and that the defendant's right to assert jurisdictional defenses was not waived by him in entering his general appearance and filing his answer to the merits. In other words, since the distinction between a general and a special appearance have been abolished, this Court has not as yet acquired *in personam* jurisdiction over him.

The defendant finds support in the soundness of his view in another rule of this Court; *i.e.* Rule 5(aa1.) This rule, which has no counterpart in the Federal Rules, deals with the subject of "Appearance: When; How Made; Withdrawal", and provides in part:

"Appearance may be made by the service and filing of notice thereof, or by the service or filing.of any motion or pleading purporting to be responsive to or affecting the complaint, *except* that appearance for purpose of satisfying a judgment, when appearance may be made by notation thereof on the judgment docket."

It is urged that Rule 5(aa1) specifies two ways by which an appearance may be entered: first, by service and filing a notice

of appearance, and second, by service and filing of a motion or pleading responsive to the complaint. It is contended that no other way of entering an appearance is stated in the rule except in the case of appearance for the purpose of satisfying a judgment when an appearance may be made by noting the same on the Judgment Docket. It is said that the statement of the exception is significant, as it indicates an intention on the part of the Court which adopted the rules that the two means of appearing specified in the rules should be exclusive of all others, except in the special case of an appearance for the purpose of satisfying a judgment. The defendant bases this conclusion upon a cardinal principle of statutory construction that where an express exception is made in a statute, the presumption is that the statute was intended to be all embracing save as to the subject matter of the exception. *Fairbanks, Morse & Co. v. Harvey*, 114 *Vt.* 425, 47 *A.* 2d 123; 50 *Am. Jur. Statutes,* Section 434; *United States v. Colorado & N. W. R. Co.,* 8 *Cir.,* 157 *F.* 321, 15 *L. R. A., N. S.,* 167, 13 *Ann. Cas.* 893; *Brahmey v. Rollins,* 87 *N. H.* 290, 179 *A.* 186. The defendant's position briefly stated is that since Rule 5(aal) states with specificity the manner in which appearances may be entered and makes an exception in the case of appearance for the purpose of satisfying a judgment, it is manifest that no other exception was intended. Thus, under Rule 5(aal) no special appearance was authorized or contemplated. The reason why Rule 5(aal) fails to provide for the entry of a special appearance is found in Rule 12(b) which expressly states that the incorporation of jurisdictional defenses in an answer constitutes no waiver thereof, and that Rule 5(aal) is therefore a recognition that jurisdictional defenses can be raised under a general appearance.

The provisions of our foreign attachment statute gives to a plaintiff in an action thereunder a substantive right; that is, foreign judgment shall be given for the plaintiff at the second term, unless the defendant shall have caused his appearance to have been entered. The appearance contemplated under the statute is a general appearance, which is a simple and absolute

submission to the jurisdiction of the Court subjecting the defendant to an *in personam* judgment. *Woolley Del. Practice*, Section 230; *Blaustein v. Standard Oil Co.*, 4 *Terry* 516, 51 *A.* 2d 568; *Amnium De Participations Industries De Luxe (S. A.) v. Spoturno*, 9 *W. W. Harr.* (39 *Del.*) 100, 196 *A.* 194; *McLaughlin v. Bahre*, 5 *W. W. Harr.* 446, 166 *A.* 800; *Kaiser-Frazier Corp. v. Eaton*, 7 *Terry* 509, 85 *A.* 2d 752. In all cases where the defendant has appeared like proceedings shall be had as in cases begun by summons. (Statute)

█ Undoubtedly under our new rules of civil procedure the ancient distinction between special and general appearances in cases begun by summons has been abolished. Rule 5 (aal) provides that appearance may be made (1) by service and filing of notice thereof, or (2) filing any motion or pleading purporting to be responsive to or affecting the complaint, except that appearances for the purpose of satisfying a judgment may be made by a notice thereof on the judgment docket. Rule 12(b) provides that every defense in law or fact to a claim for relief in any pleading * * * shall be asserted in the responsive pleading thereto, if one is required, including (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, and (5) insufficiency of service of process; thus, in an action commenced by summons the defendant under his voluntary appearance may file an answer to the merits and at the same time include therein whatever affirmative defenses he might desire concerning jurisdictional defects, or, as indicated under Rule 12(b), he may proceed by motion in respect thereto.

The ancient distinction, however, between special and general appearances in actions commenced by foreign attachments has not been abolished, and this Court under its rule making power cannot alter or change the procedural aspects of our foreign attachment statute in this respect. Any modification or change in this regard must stem from legislative action. *Kaiser-Frazier Corp. v. Eaton*, 1952, *supra*. Judge Herrmann recognized this situation when he entered his order of judgment *nisi* in the

present case on April 29, 1954, in which he stated in part "such judgment to become final upon adjournment of the March Term, 1954, of the Superior Court in and for New Castle County in the event that the defendant shall not have entered a general appearance in this cause at the adjournment of the March Term, 1954, of the Superior Court."

The defendant by entering his general appearance on April 26, 1954, prior to the adjournment of the March Term, 1955, converted the action from one *in rem* to one *in personam*, and, as such, it assumed the qualities and characteristics of such an action and is to be prosecuted in all respects the same as if the defendant had been served with process of summons; that is to say, the defendant by entering his general appearance has submitted himself to the *in personam* jurisdiction of this Court irrespective of the lack of service of process or any defects therein.

Due to the import of the questions raised in this case counsel for the respective parties have asked me to determine Questions 2 and 3, notwithstanding my conclusion that the affirmative defenses as included in the defendant's answer cannot be asserted in the present case because of the entry by the defendant of his general appearance.

Question 2 presents the following for determination: Were the shares of stock of the defendant validly attached by the Sheriff by leaving with the corporate resident agent an alleged "duplicate original" of the writ of attachment?

Two statutes are involved. Section 324(b) and Section 321 of Title 8 of the *Code of* 1953:

"§ 324. Attachment of shares of stock or any option, right or interest therein; procedure; sale; title upon sale; proceeds

\* \* \* \* \* \*

"(b) When shares of stock, or any option to acquire such or any right or interest in such, shall be so attached, a certified copy of the process shall be left by the officer with the president,

cashier, treasurer, any director, or the resident agent of the corporation, who shall give the officer a certificate of the number of shares held or owned by the debtor in the corporation, with the number or other marks distinguishing the same, or in case the debtor appears on the books of the corporation to have an option to acquire shares of stock or any right or interest in any shares of stock of the corporation there shall be given the officer a certificate setting forth any such option, right or interest in the shares of the corporation in the language and form in which the option, right or interest appears on the books of the corporation, anything in the charter or by-laws of the corporation to the contrary notwithstanding. Service upon a corporate resident agent may be made in the manner provided in section 321 of this title."

"§321. Service of process on corporations

"(a) Service of legal process upon any corporation created under this chapter shall be made by delivering a copy thereof personally to the president of the corporation, or by leaving the same at his dwelling house or usual place of abode. If the president resides out of the State, service thereof may be made by delivering a copy thereof to the secretary or one of the directors of the corporation, or upon the resident agent in charge of the principal office of the corporation in this State, or by leaving the same at the dwelling house or usual place of abode of the secretary, director or resident agent (if the resident agent be an individual), or at the principal office or place of business of the corporation in this State. If the resident agent be a corporation, service of process upon it as such agent may be made by serving a copy thereof on the president, vice-president, secretary, assistant secretary, or any director of the corporate resident agent. * * *"

Counsel for the respective parties have stipulated that the paper that was left with the corporate resident agent be made a part of the record in this case. A reading of the paper discloses that there is no language appearing on the face thereof indicat-

ing that it is a certified copy of the original writ, or a true copy, or a duplicate original thereof. The paper carries the seal of this Court, but the only purported signature of the Prothonotary is a rubber stamp facsimile. A like rubber stamp facsimile appears on the original writ.

The defendant contends (1) that the attachment under the writ was invalid because the paper delivered to the corporate resident agent does not have an endorsement thereon by the Prothonotary that it is a certified copy of the original, in accordance with the provisions of Section 324(b) of Title 8 of the *Code* aforesaid; (2) that the paper in question as delivered to the corporate resident agent is not a duplicate original; (3) that, if the paper delivered to the corporate resident agent be held to be a duplicate original, it is ineffectual for the reason that the original writ is invalid because it was not signed by the Prothonotary in accordance with Rule 4(c) of this Court.

The plaintiffs answer these contentions by saying (1) that service upon the corporate resident agent of a certified copy of the original writ is not essential; rather, they say that a mere copy of the original writ is all that is required under Sections 324(b) and 321 of Title 8 aforesaid; (2) that, if a certified copy of the original writ is required, the paper served upon the corporate resident agent is a duplicate original and should be held to meet the statutory requirements; (3) that the Prothonotary may adopt a rubber stamp facsimile of his signature for such purposes as herein without violating the provisions of Rule 4(c) of this Court.

The question presented under (1) relates to the proper construction to be given to the language employed under the two sections aforesaid. Section 324(b) provides that when shares of stock, etc., are attached a certified copy of the original writ shall be left with the proper officials as indicated therein. The last sentence of Section 324(b) provides the manner of service upon a corporate resident agent by indicating that such service may be made in a manner provided under Section 321. Section

321 provides for the service of process on corporations, including service on officers, resident agents (individuals), and corporate resident agents. These two sections (324(b) and 321) when read together, as necessity requires, clearly indicate that an attachment of shares of stock may be made by leaving with the corporate resident agent a certified copy of the original writ in the same manner as corporate resident agents are served with process under the provisions of Section 321; that is, that service may be made by serving a certified copy of the original writ on the officers as indicated in Section 321, aforesaid.

In respect to (2) I think the paper served upon the corporate resident agent is a duplicate original, and, if the original is a valid writ, then the duplicate original should be said to be the equivalent of a certified copy. Thus, the shares of stock would have been validly attached by the Sheriff leaving with the corporate resident agent the alleged duplicate original of the writ of attachment.

Under (3) the question is whether or not the original writ is invalid for the reason that it was not signed by the Prothonotary in accordance with the provisions of Rule 4(c) of this Court.

Rule 4(c) recites in part as follows:

"(c) Contents of writ: * * * The process shall bear the date of its issuance, be signed by the Prothonotary, be under the seal of the Court, contain the name of the Court and the names of the parties, * * *."

A review of the practice in the Prothonotary's office reveals that a rubber stamp bearing the facsimile of the signature of the Prothonotary was used commencing October, 1953, and ending February, 1954. The reason assigned for the use of the stamp instead of the signature of the Prothonotary was to save time in making out various papers and writs in said office. From February, 1954, until now, as prior to October, 1953, all writs and papers issued by the Prothonotary's office are under the written signature of the Prothonotary.

While it is true that generally one may adopt as his signature any printed or stamped facsimile copy of his signature and by his conduct be bound thereby, the circumstances here presented are clearly distinguishable from the cases upholding such doctrine. The need for absolute certainty insofar as that is obtainable in preventing error in court records of judgments, attachments, executions, etc., requires that Rule 4(c) of this Court should be literally complied with.

For the reasons stated, it is my conclusion that the original writ was invalid and that the duplicate original thereof can have no force and effect, thus, rendering the attachment of the shares invalid.

Under the third question presented the plaintiffs contend that the defendant's right to attack the attachment has been waived by the filing by the Corporation Trust Company as resident agent for Empire Securities, Inc., of a certificate designating the shares registered in the name of the defendant. This precise argument was presented to and rejected by the Superior Court in the case of *Fowler v. Dickson*, 1909, 1 *Boyce* 113, 74 *A.* 601, 606. The Court in the *Fowler* case stated:

"The second ground upon which the plaintiff resists the defendant's motion is 'That the German Union, having filed the certificate showing the number of shares of stock held by the defendants, waived all technicalities in the service which concerned itself alone.' If this contention be true, it does not alter the right of the defendants to overcome the effect upon their interest of such waiver of technicalities. The attachment of shares of stock rests wholly on judicial process, and its legality depends on the due pursuit of the steps prescribed by the law for its prosecution. It can borrow no aid from the volunteered acts or waiver of technicalities by the corporation with a certain officer of which the copy of the process should be left. Such acts are regarded as void, so far as they interfere with the rights of the defendant or with other third parties. *Drake on Attachment*, § 451b. It is therefore held that the plaintiff cannot avail

himself of any waiver by the corporation of any technicality in the performance of which the defendants have an interest."

I conclude that the defendant's right to attack the attachment was not waived by the filing by the Corporation Trust Company as resident agent for Empire Securities, Inc., of the certificate designating the shares registered in the name of the defendant.

An order will be entered in accordance with my conclusions as indicated in this opinion.