ALICE F. SCHOTT, ALICE M. RICHARDS, KATHERINE A. PEAKE, HELEN L. PEDOTTI, ADOLPH C. PEDOTTI, MARY L. DANGERFIELD, WALTER SCHOTT, LILLIAN G. GORDON, BERTHA M. GORDON, RICHARD M. GORDON, JANE GORDON SPRENGER, JOHN A. HYMAN, FLORENCE S. HYMAN, ELSIE B. PASKUS, LOUISE DANZIGER, JANE GORDON LOEB and ARTHUR B. HYMAN, Trustees u/a 2—1—52 with BERTHA M. GORDON, THE MARTIN PASKUS FOUNDATION, INC., LOUISE DANZIGER and FRED DANZIGER, as Trustees under three trusts,

Plaintiffs,

*vs.*

CLIMAX MOLYBDENUM COMPANY,<br>a Delaware corporation,<br>Defendant.

*New Castle, August 24, 1959.*

*S. Samuel Arsht,* of Morris, Nichols, Arsht & Tunnell, Wilmington, and *Charles H. Lieb, Morris Katz* and *Daniel Rosenbloom,* of Paskus, Gordon & Hyman, New York City, for plaintiffs.

*Robert H. Richards, Jr.,* of Richards, Layton & Finger, Wilmington, and *Arthur H. Dean, Robert A. McDowell, William E. Willis* and *Edward C. Stebbins, Jr.,* of Sullivan & Cromwell, New York City, for defendant.

SEITZ, Chancellor: Plaintiffs, stockholders of Climax Molybdenum Company ("Climax"), brought this action to procure a judgment that the merger and consolidation of Climax with American Metal Company Limited ("American") is null and void. Both parties have moved for summary judgment and this is the decision thereon.

Plaintiffs first attack the merger on the ground that it was not approved by two-thirds of the outstanding common stock of Climax as required by statute. Although the merger was consummated on December 30, 1957, the parties took a long time to perfect the record.

Of the 2,580,000 shares of Climax issued and outstanding, 1,720,000 shares (two-thirds) were required to vote for the merger

to make it effective under the statute. The inspectors of election reported that 1,781,564 shares voted in favor of the merger. It has since been conceded by the defendant, however, that 2,424 shares were incorrectly counted for the merger. Nevertheless, the defendant contends that 1,779,130 shares were properly voted for the merger, being 59,130 more shares than the required two-thirds. Plaintiffs contend on several grounds that more than 59,130 shares were incorrectly counted for the merger.

Plaintiffs present three grounds to support their allegation that the merger did not receive the approval of two-thirds of the common stock of Climax:

1. 62,834 proxies voted in favor of the merger were not signed by the registered owner but rather were rubber-stamped with the registered owner's name.

2. Where a series of proxies was given by a single broker, the entire series was counted (subject to exceptions hereinafter mentioned) rather than only the last proxy. (It is tacitly agreed that the number of shares subject to this alleged infirmity would be sufficient to reverse the results reported by the inspectors of elections).

3. More than 59,130 shares were voted by pledgees rather than pledgors, contrary to § 217 of the Delaware Corporation Law.

I first consider plaintiffs' contention that 62,834, proxies which were rubber-stamped with the owners' names should be rejected as not signed. Admittedly there is no statutory, charter or by-law requirement governing this problem. Moreover, there is no proof that any of the stamped signatures were in fact unauthorized.

One may generally adopt as his own signature any printed or stamped facsimile copy thereof. Compare *Brainard v. Canaday*, 10 *Terry* 182, 112 *A.2d* 862. In the Canaday case the trial court found that the Court Rule did not permit the use of a stamp by its clerk. However, assuming the soundness of the decision, that case is distinguishable on the basis of the explicit language of the Rule and also because of the "personalized" nature of the function to be performed by the clerk.

■ In contrast, I think the use of the stamped facsimile signature is at least sufficient in the corporate proxy-voting field to cloak such signatures (of the registered owners) with the presumption of authenticity. Compare *Atterbury v. Consolidated Coppermines Corporation*, 26 *Del.Ch.* 1, 20 *A.2d* 743; *Gow v. Consolidated Coppermines Corp.*, 19 *Del.Ch.* 172, 165 *A.* 136. I say this because the proxy material is generally sent to the registered owner and it must be presumed that he receives it. It is therefore not unreasonable to assume that he executed or authorized the execution of the returned stamped signature proxy. Compare Atterbury v. Consolidated Coppermines Corporation, above. In the cases of brokerage houses, where the problem most frequently arises, it is evident that the stamped form is an accepted practice.

Considering the practicalities of corporate life, at least in the field of proxy voting, and realizing that the rubber-stamped signature gives rise only to a presumption of authority, I conclude that the proxies here involved were signed and therefore properly counted by the inspectors.

■ Plaintiffs next contend that certain proxies were counted which should have been considered revoked by later proxies. The result would presumably be changed if plaintiffs' contention has merit.

Some brokers gave a series of proxies, all of which were voted except in those cases where explicit instructions to the contrary appeared on the face of a subsequent proxy or where the series exceeded the total number of shares held by the broker, in which cases only the final proxy was counted.

Plaintiffs say that only the last proxy should have been counted. Their theory is that a later proxy revokes an earlier proxy although such instructions are not given in the proxy and although the number of shares covered by the various proxies does not exceed the total number of shares registered in the proxy-givers name. This raises what I believe to be a novel question in this court.

Clearly a later proxy revokes an earlier one when such instructions appear on the face of the later proxy. And there is no question

but that a later proxy revokes an earlier one where the total number of shares registered in the name of the person giving the proxies is included in each proxy. But is the rule that a later proxy revokes an earlier one applied indiscriminately?

As noted, the various proxies in each series were not, in toto, in excess of the total registered in the particular stockholder's name. Nor were any instructions contained on the proxies. Thus, there is nothing on the face of the proxies which rendered the counting of all of such shares inconsistent. Although not the case here, such a later proxy might be intended to revoke an earlier one. Since it is not necessarily so, I believe the inspectors of election properly resolved the doubt in favor of counting both. My conclusion is based in part on a general policy against disenfranchisement. See *Gow v. Consolidated Coppermines Corp.*, above; *Investment Associates v. Standard Power & Light Corp.*, 29 *Del.Ch.* 225, 48 *A.2d* 501, affirmed 29 *Del.-Ch.* 593, 51 *A.2d* 572. It is also based upon the fact, as here, that this problem arises largely from broker-given proxies. Such brokers are undoubtedly expressing the varying wishes of beneficial owners.

Obviously brokers should, as the Stock Exchange Rule provides, make their intention clear on the face of the proxy. Nevertheless, I think my conclusion is more likely to implement the true intent of the beneficial owner. I conclude that the particular proxies here involved were properly counted by the inspectors. Nor is there any basis in the evidence for rejecting such votes. The evidence adduced shows that in fact the shares, with one exception, were voted in accordance with the wishes of the beneficial owners.

Finally, plaintiffs contend that the merger did not receive the approval of two-thirds of the common stock of Climax because brokers holding stock in margin accounts caused more than 59,130 shares of such stock to be voted in favor of the merger. Plaintiffs say that under 8 Delaware Code § 217 such shares were not properly voted.

Since there was no challenge to the voting of such shares and since they were given by the unchallenged registered owners, the inspectors of election quite naturally counted the proxies here in-

volved. The issue of their validity was raised for the first time in this action.

As noted, plaintiffs argue that 8 Delaware Code § 217 precludes brokers from voting shares held in margin accounts and registered in their names. Their reasoning goes like this: the relationship between the customer and the broker in a margin account situation is one of pledgor-pledgee; under 8 Delaware Code, § 217 the pledgee cannot vote the shares unless expressly so authorized on the corporate books; they were not here so authorized; consequently, only the pledgors could vote.

Section 217 provides:

"Persons holding stock in a fiduciary capacity shall be entitled to vote the shares so held, and persons whose stock is pledged shall be entitled to vote, unless in the transfer by the pledgor on the books of the corporation he has expressly empowered the pledgee to vote thereon, in which case only the pledgee, or his proxy may represent said stock and vote thereon."

At the outset, defendant denies that a pledgor-pledgee relationship exists in a margin account unless there is a debit situation. This I need not decide. I shall assume that all shares in a margin account, regardless of its debit or credit status, are held by the broker as pledgee. I shall also assume, without deciding, that plaintiffs, although not the pledgors, have standing to raise this issue in this proceeding.

The stock here voted was held in margin accounts and registered in the names of various brokers without any evidence on the corporate books that they were held in such accounts. In an action to review an election, if the pledge relationship be shown, does the statute, in and of itself, require a determination that such shares were not validly voted? I pass over my doubt as to whether this statute was intended to apply to margin accounts. Strangely enough, however, plaintiffs would have the statute apply to brokers holding shares in margin accounts, where they have an "interest," but presumably not to brokers merely holding as agents.

■ As a general rule the corporation is entitled to rely on its stock list in determining who is entitled to vote. See *American Hardware Corporation v. Savage Arms Corporation, 37 Del.Ch.* 59, 136 *A.2d* 690. Section 217 carves out certain exceptions and the question is whether it contains a positive prohibition against the right of the brokers to vote in the situation here presented.

■ What are the apparent objects of the statute? I believe the portion of the statute with which we are involved was enacted primarily to clarify voting rights as between pledgors and pledgees. It also gives the corporation a definite rule it can follow in conducting an election.

The statute clearly controls if a dispute arises between a pledgor and the pledgee as to which has the right to vote. In such a case unless the pledgee is given voting power on the books, that right is in the pledgor. But the statute does not necessarily make the pledgor's right exclusive, at least where evidence of the pledge does not appear on the books and where the pledgor does not attempt to vote. In contrast, the statute does use language of exclusion in a case where the books recite that the voting rights are in the pledgee.

When it is considered that the statute seeks to resolve voting rights as between a pledgor and pledgee and seeks to adopt a rule which the corporation, in conducting an election, can apply without too much difficulty, I ask what purpose would be served by construing the statute to prohibit these brokers from voting. I see none.

■■ The shares involved were registered in the broker's name without qualification and with at least the tacit consent of the beneficial owner. As a practical matter, in a margin account, it is almost necessary that they be so registered to facilitate the right of the broker to borrow on them. I also take judicial notice of the regulation of the stock exchange which imposes certain duties on such brokers with respect to consulting the voting desires of the beneficial owner. Thus there is no "policy" which is frustrated by construing the statute to permit a broker holding shares in a margin account to vote such shares. At least this is so where the corporate books do not show that they are qualifiedly held or when the pledgor does not attempt to vote them.

Although not precisely applicable the spirit of the opinion in *Canadian Imp. Co. v. Lea*, 74 *N.J.Eq.* 234, 69 *A.* 455, supports my conclusion.

It may be noted that 8 *Del.C.* § 159 provides in part that "whenever any transfer of shares shall be made for collateral security, and not absolutely, it shall be so expressed in the entry of the transfer." This statute was not referred to by the parties. I need not decide whether it is applicable to a margin account case. I say this because, in any event, it appears to be for the benefit of the parties thereto. They have not invoked it.

Plaintiffs rely on several cases. They cite *Italo Petroleum Corp. of America v. Producers Oil Corporation*, 20 *Del.Ch.* 283, 174 *A.* 276. That case involved a review of an election. One of the questions presented concerned shares registered on the books of the corporation in the name of the pledgee as pledgee. The question was whether those shares were properly counted as part of the pledgor's shares for voting purposes. The court said they were.

Clearly the pledgor in that case was entitled to vote the shares since the voting rights were not transferred on the corporate books and the evidence of the pledge appeared thereon. Moreover, the pledgee had not sought to vote such shares. Consequently I do not believe the case is authority for the conclusion that a registered shareholder who is an undisclosed pledgee may not vote where his action is not challenged by the pledgor.

I note that some of the language in the opinion in the Italo case appears to describe the statute in broader terms than the wording of the statute itself would suggest. For instance, the opinion says that the statute provides that stock registered in the name of a pledgee shall be voted by the pledgor unless, etc. The statute actually does not use the words "shall be voted." The statute says that the pledgor shall be entitled to vote. It is only in connection with the provision about registering a pledgee's voting rights that the statute purports to use words of exclusion, viz., "in which case only the pledgee * * * may * * * vote." Therefore, the Italo case is not contrary to my conclusion.

Plaintiffs also rely on a footnote in the Supreme Court opinion in American Hardware Corporation v. Savage Arms Corporation, above. The Court merely observed that a contention had not been made that the beneficial owners of shares held in street names were entitled to vote under section 217. Passing over the obvious fact that nothing was decided by the footnote language, it may be noted that the court only spoke in the terms of the statute, which I have construed not to prohibit voting by an undesignated pledgee. Plaintiffs also cite *In re Chilson*, 19 *Del.Ch.* 398, 168 *A.* 82, but it merely recited what is clearly so, viz., the pledgor has the right to vote unless he has given that power solely to the pledgee on the corporate books. It does not touch the question of the undesignated pledgee's right to vote when the pledgor does not vote.

I conclude that the votes cast by brokers on shares held in margin account were not invalid under section 217. Moreover, no documentary evidence was offered in this case to show that they were voted contrary to the instructions of the beneficial owners. The plaintiffs' request that such shares be not counted must be rejected. Therefore, plaintiffs' motion for summary judgment must be denied.

I now consider defendant's motion for summary judgment. It is based upon the contention that the complaint as amended, fairly construed, raised only the issue as to whether the required two-thirds vote was cast in favor of the merger.

Neither party filed any sworn material directed to an issue of unfairness. Thus, in disposing of defendant's motion, the court has before it only the complaint as amended and the answers thereto.

The complaint alleges that the defendant dominated and controlled the board of Climax. It also alleges that the proposed merger is grossly unfair to Climax's stockholders for certain designated reasons (par. 18).

The allegation concerning American's domination and control of Climax's board, if proved, would shift the burden to those espousing the merger to show its fairness. In saying this I put aside any question of independent stockholder approval since it is not asserted.

It can thus be seen that the court construes the pleadings to raise the issue of the fairness of the merger apart from the question as to whether the merger received the required two-thirds vote. Since the unfairness issue is only a matter of allegation and denial in the pleadings it cannot be resolved on a motion for summary judgment. What relief plaintiffs could obtain, if successful on the merits of this contention, I need not now decide.

Defendant's motion for summary judgment will be denied.

Present order on notice.