WARD M. CANADAY, Petitioner, v. THE SUPERIOR COURT OF THE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY and the HONORABLE CHARLES L. TERRY, Sitting as Judge of Said Court, Respondents.

KATHARINE R. BRAINARD, Executrix Under the Last Will and Testament of Millar Brainard, Deceased, and SAMUEL VANCE, JR., Intervening Respondents.

(*November* 30, 1955.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*Edwin D. Steel, Jr.* (of Morris, Steel, Nichols and Arsht) for petitioner.

*James R. Morford* (of Morford and Bennethum) for inter-vening respondents.

Supreme Court of the State of Delaware, No. 4, 1955.

WOLCOTT, J.:

This is a petition for a writ of prohibition[1] to end further proceedings in an action pending in the Superior Court of New Castle County. The action was filed by Brainard, the intervening respondent here, against Canaday for brokerage fees, and was commenced by a writ of foreign attachment and the purported seizure under it of Canaday's stock in a Delaware corporation.

After the purported seizure, Canaday petitioned the. Superior Court for leave to appear specially in the action in order to attack the validity of the writ of foreign attachment and the seizure under it. His petition to appear specially for this purpose was not pressed to hearing.[2] Ultimately, Canaday directed the entry of a "general appearance" and filed an answer to the complaint. His answer was addressed first to the merits of the complaint but concluded with two affirmative defenses attacking the process of foreign attachment. The first affirmative defense was that the writ did not comply with 8 *Del. C.* § 324(b). The second affirmative defense was that the Superior Court had acquired no personal jurisdiction over Canaday because the writ of foreign attachment under which his stock had purportedly been seized was an illegal attempt to coerce him into appearing before the Superior Court. We think both affirmative defenses raised the same question, *viz.*, the sufficiency of the process of foreign attachment.

The Superior Court, *Brainard v. Canaday*, 112 *A.* 2d 862, first passed upon the sufficiency of the two affirmative defenses

[1]This Court has original jurisdiction to issue writs of prohibition to all inferior courts of the state. *Constitution*, Art. 4, § 11(6), *Del. C. Ann.*

[2]Counsel for Brainard gave notice that he would oppose the petition for leave to appear specially on the ground, *inter alia*, that such an application was improper in a foreign attachment action—a surprising position to take in view of the former practice in such actions, and in view of his position in the instant argument. *Cf. Blaustein v. Standard Oil Co.*, 4 *Terry* 516, 51 *A.* 2d 568.

and held that the process was invalid, but that, since Canaday had appeared generally in the cause, he had submitted himself to the personal jurisdiction of the Superior Court. It therefore proposed to order that the cause continue upon its merits as an action *in personam*.

Forthwith, Canaday petitioned this court for a writ of prohibition. Brainard, intervening in this court, moved to limit the issues raised by the petition. We subsequently held that the sole question presented by the petition was whether or not Canaday had appeared in the action and thus submitted himself to *in personam* jurisdiction of the Superior Court. See *Canaday v. Superior Court*, 116 *A.* 2d 678. That question is now before us for decision.

Canaday argues that Rule 12(b) of the Superior Court, *Del. C. Ann.*, permits the joinder in one pleading of defenses attacking the jurisdiction of the court with a defense to the merits without the waiver of any possible defense. It is, therefore, argued that special appearances are no longer necessary in the Superior Court to attack jurisdiction, and that an appearance to raise jurisdictional questions even though joined with an answer to the merits does not constitute a waiver of the jurisdictional point. Canaday concludes, therefore, that since his affirmative defense attacking the validity of the process which sought to coerce his appearance has been sustained by the Superior Court, he has not submitted himself in any respect to personal jurisdiction, even though he has answered generally to the merits of the action which, under Rule 5(aal), is an appearance.

Brainard, on the other hand, argues that since the foreign attachment statute establishes the procedure to be followed in all actions commenced by the writ, and specifically provides for the entry of default judgment after seizure unless the non-resident defendant comes into court and submits himself to complete personal jurisdiction, this statutorily established procedure cannot be altered by rule of court. He concludes that the accept-

ance of Canaday's argument would result in an illegal alteration of the statutory scheme.

The statute[3] governing the use of the mesne process of foreign attachment provides for the seizure of the property of a non-resident defendant after the commencement of an action in the Superior Court, and for the entry of a default judgment in that action against the non-resident defendant at the second term following the issuance of the writ unless he appears. It further provides that an appearance by the non-resident in the action shall not dissolve the attachment, but that it shall continue to bind the seized property as security for any personal judgment ultimately recovered unless the appearing defendant gives security to the extent of the value of the property seized.

The purpose of the Delaware Foreign Attachment Statute is to coerce a non-resident defendant who owns property within the State into submitting to personal jurisdiction upon pain of forfeiture of his seized property. *Blaustein v. Standard Oil Co.*, 4 *Terry* 516, 51 *A.* 2d 568; *Kaiser-Fraser Corporation v. Eaton*, 7 *Terry*, 509, 85 *A.* 2d 752. The Delaware statute has successfully withstood the test of Federal Due Process. *Ownbey v. Morgan*, 256 *U. S.* 94, 41 *S. Ct.* 433, 65 *L. Ed.* 837.

Prior to the promulgation in 1948 of the present rules of the Superior Court, each non-resident defendant whose property had been seized had under the statute various courses of action open, which he could have elected to pursue at his discretion. Thus, he could have appeared generally, thereby submitting himself to complete personal jurisdiction, and have given security to dissolve the attachment, or have permitted the attachment to stand as security for the ultimate satisfaction of any personal judgment which might be obtained against him. On the other hand, if he did not elect to appear generally he could have appeared specially, thereby not submitting himself to personal jurisdiction, and have attacked the validity of the foreign at-

---

[3] 10 *Del. C.*, §§ 3506, 3526, 3531.

tachment. If that attack proved successful he would have obtained the release of his property from the seizure. Furthermore, he could have elected to proceed by a combination of these two alternatives. Thus, after appearing specially and obtaining the release of his property from the seizure, he could have entered, if he so desired, a general appearance and have defended the action on its merits, without there being in the action any security for the satisfaction of a judgment ultimately recovered against him.[4] Finally, either initially or after having appeared specially and having lost his attack upon the validity of the attachment, he could have elected to let the matter go by default, in which event a default judgment would have been entered against him and the seized property sold to satisfy that judgment either totally or partially.

Under the statute and the former practice, plaintiffs in actions commenced by foreign attachment had the right to seize property of a non-resident defendant in order to coerce his submission to the personal jurisdiction of a Delaware court. In the event the validity of the attachment was sustained under attack, or was not attacked, and if the non-resident did not submit to personal jurisdiction by appearing in the action, the plaintiff had the right to a default judgment against the non-resident and to have the seized property sold to satisfy the judgment. Under the former practice, plaintiffs also knew from the procedure followed by the defendant just what course of action he had elected. We think the right to be informed is an important consideration because of the possibility of perfecting a faulty seizure of property through the use of alias writs of attachment.

Under the former practice these rights of plaintiffs and non-resident defendants, whether they be regarded as matters of substance or of mere procedure, were established by statute, judicial construction and practice. The petition before us, and

[4]It is doubtful that under the former practice he could have accomplished this result by one procedural step. The point has never been passed upon in this state.

the arguments of counsel, present the basic question of whether or not the Rules of Civil Procedure of 1948 now regulate the procedure in foreign attachment, and whether, if that be the fact, the former practice under the statute has been changed.

Preliminarily, we must determine whether or not the new rules were intended to govern the practice in actions commenced by foreign attachment. We have no doubt that the drafters so intended. By Rule 1 it is provided that, with certain exceptions set forth in Rule 81, all procedure in the Superior Court shall be governed by the new rules. Rule 81 lists certain types of action, and provides that the procedure in them shall conform to the new rules so far as practicable and to the extent that to do so will not contravene any applicable statute. The list of exceptions found in Rule 81 does not contain foreign attachment. We think it obvious, therefore, that it was intended that the new rules should govern the procedure in foreign attachment.

Upon the premise that the new rules abolish the former distinction between special and general appearances, Canaday argues that since he has raised successfully the question of the validity of the process which sought to coerce his submission to jurisdiction in a precise manner permitted by Rule 12(b), the action should have been dismissed by the Superior Court.[5]

We agree that the distinction between general and special appearances has been abolished by the new rules. By Rule 5 (aa1) it is provided that an "appearance" may be made by serving a notice thereof, or by the service and filing of any motion or pleading purporting to be responsive to the complaint. This rule, therefore, provides for the entry of an "appearance" for the purpose of answering or defending in accordance with the provisions of Rule 12(b), which, *inter alia*, provides a method for attacking the validity of the process.

---

[5]It is doubtful that in any event a dismissal of the action would follow, for it is possible that the plaintiff would have sued out alias writs. *Cf. Hisel v. Chrysler Corporation, D. C.,* 90 *F. Supp.* 655.

Under the old practice a special appearance to attack the process constituted a protest against the exercise of jurisdiction over the person or property. A general appearance constituted a voluntary submission to that jurisdiction. The two kinds of appearance served as a method of establishing the status of a defendant before the court, that is, whether or not he had submitted to personal jurisdiction. This was their function. However, there is now only one kind of appearance which, of itself, cannot perform this function. In cases begun by summons, that function is no longer necessary for, if the summons is good, the defendant is automatically subject to personal jurisdiction whether he likes it or not, while, if it is bad, he is safely out of court, no matter how he chooses to raise the point. But, as we shall show, it is still necessary in cases begun by foreign attachment to have some procedure that will discharge the function formerly performed by the two kinds of appearance, *viz.*, the election of a defendant to submit to personal jurisdiction or to refuse to do so.

Before undertaking to find such a procedure in Rule 12(b), we refer to the origin of the rule and the construction placed upon it in the decisions. The 1948 Rules of the Superior Court are modeled upon, and in many instances, duplicate the 1938 Rules of Civil Procedure for the District Courts of the United States, 28 U. S. C., with, nevertheless, some modification to harmonize them with remedies available in the courts of this state, but which were non-existent in Federal law. Basically, however, the 1948 Superior Court Rules are the Federal Rules of 1938, and the construction of those rules by the Federal judiciary is of great persuasive weight in the construction of the present Superior Court Rules. *Patterson v. Vincent*, 5 *Terry* 442, 61 *A.* 2d 416; *Fusco v. Dauphin*, 6 *Terry* 499, 75 *A.* 2d 701.

Canaday relies upon a series of Federal decisions which hold that the abolition of the distinction between special and general appearance permits the filing of an answer under Rule 12(b) joining the defense of an attack upon the process with an answer

to the merits, without a general submission to personal jurisdiction, if the attack upon the process is ultimately sustained. See *Kaufman v. United States, D. C.,* 35 *F. Supp.* 900; *Blank v. Bitker,* 7 *Cir.,* 135 *F.* 2d 962; *Devine v. Griffenhagen, D. C.,* 31 *F. Supp.* 624; *Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 3 *Cir.,* 139 *F.* 2d 871; *Alford v. Addressograph, etc., Corp., D. C.,* 3 *F. R. D.* 295; *Bowles v. Underwood Corp., D. C.,* 5 *F. R. D.* 25, and *Investors Royalty Co., Inc., v. Market Trend Survey, Inc.,* 10 *Cir.,* 206 *F.* 2d 108.

All of the cited cases, however, with the exception of the *Investors Royalty* case, are cases in which personal jurisdiction over the defendant had been sought by the service of a summons. In the last mentioned case the action was commenced in an Oklahoma State Court by the mesne process of attachment and, thereafter, removed to the Federal Court by the defendant. The defendant appeared in the cause specially and moved to quash service by publication (which was provided for by the Oklahoma Foreign Attachment Statute) upon four grounds. These grounds basically attacked the propriety of the use of the mesne process and lastly moved to quash the service upon the ground that the property purportedly seized was not located within Oklahoma. In answer to the contention that the last defense sought affirmative relief and thus constituted a general appearance and submission to jurisdiction, the Court of Appeals (10th Cir.) held that the distinction between general and special appearances had been abolished by Rule 12(b) of the Federal Rules and that, therefore, no submission to personal jurisdiction had been made. We think the case is not helpful in the present controversy because, despite the language of the court, the defendant did in fact appear specially, and, as far as the reported decision indicates, did not purport to answer to the merits.

We do not think the cited cases are precisely in point for none of them is a case in which a defendant, whose submission to jurisdiction was sought to be coerced by the attachment

of his property, filed an answer to the merits of the action and, at the same time, attacked the validity of the attachment designed to coerce him into defending on the merits. The cited cases would be most persuasive if the matter before us was the usual case instituted by summons seeking to acquire thereby personal jurisdiction over the defendant. We agree without hesitation that in such a case Rule 12(b) permits the joining of an attack on the jurisdiction with an answer to the merits without the danger of submission to jurisdiction on the part of the defendant, if his jurisdictional defense is ultimately upheld. Indeed, it would seem that no other result under the rules in summons cases would be justified for the reason that a successful attack on the process of summons destroys the only foundation of the court's jurisdiction.

A different situation is presented, however, in cases commenced by the mesne process of attachment, for in such cases personal jurisdiction over the defendant is acquired, if it is acquired at all, solely from the voluntary appearance of the defendant, and not by reason of the attachment which at most is a coercive force designed to induce a voluntary submission to jurisdiction. 4 *Am. Jur.*, Attachment, § 48; *Blaney v. Randel,* 3 *Harr.* 546; *Bellah v. Hilles,* 2 *Penn.* 34, 43 *A.* 89; *Geylin v. DeVilleroi,* 2 *Houst.* 203. That such a submission may be coerced by attachment of property does not destroy its voluntary nature. 1 *Woolley on Delaware Practice,* § 226.

We have before us what appears to be an entirely novel situation, and one which would not have arisen prior to the 1948 Rules. Canaday has successfully quashed the coercive mesne process of attachment but, in so doing, has answered to the merits which, under Rule 5(aal), amounts to an appearance. Heretofore, the entry of an appearance has been considered under the foreign attachment statute to be a complete submission to personal jurisdiction. The effect of this apparently contradictory situation requires an analysis of Rule 12(b), in its application to foreign attachment proceedings.

■ We have concurred in the view that the general effect of Rule 5(aal) and Rule 12(b) is to abolish the distinction between general and special appearances, thus dispensing with the necessity of raising some defenses by special appearance. We think, however, that basically the abolition of the distinction amounts only to the abolition of terminology and the elimination of a procedural step—an order granting leave to appear specially—formerly necessary to raise some jurisdictional questions.[6] Due process of law, however, would seem to require that the right to raise these jurisdictional questions without requiring complete submission to jurisdiction be preserved. We think this right is specifically preserved by Rule 12(b). Thus, it is permitted to join together in one pleading two or more defenses of whatever type without waiver of any defense, or, at the option of the pleader, it is permitted to raise some defenses by motion to dismiss, without the necessity of answering to the merits at the same time.

Seven specific defenses are now permitted by Rule 12(b) to be raised by motion without the necessity of answering to the merits at the same time. Under the former practice in this state, defense numbered (1) would have been raised by a plea to the jurisdiction; defenses numbered (2), (3), (4) and (5) would have been raised by a petition to enter a special appearance; defense numbered (6) would have been raised by demurrer to the declaration, and defense numbered (7) would have been raised by a plea in abatement. See 1 *Woolley on Delaware Practice*, §§ 158, 227 and 450.

Thus, it seems apparent that the result of Rule 12(b) is to consolidate in one procedural step the raising of questions which theretofore would have been raised at different stages of the proceeding by a variety of devices known to common law pleaders. This conclusion harmonizes with the theory of Rule 12(b) which is that quick presentation of all defenses and objections

---

[6]See 1 *Woolley on Del. Pr.*, § 227 for jurisdictional questions which formerly could have been raised only under a special appearance.

should be encouraged, and successive procedural steps tending to do nothing but delay should be curtailed. 2 *Moore's Federal Practice*, § 12.12, p. 2260.

As we have pointed out, certain procedural elections formerly were open to the parties in foreign attachment proceedings in Delaware. Brainard argues that these rights of election are matters of substantive right having been statutorily created and that, therefore, they may not be abrogated by a court rule, since 10 *Del. C.* § 561(b, c) authorizes the Superior Court to adopt rules superceding all statutory inconsistencies only in so far as the substantive right of any party is not abridged, enlarged or modified. Canaday, on the other hand, argues that the procedural rights of election existing prior to the adoption of the new rules were not substantive and, therefore, have been modified by Rule 12(b).

We do not think we have to determine the troublesome question of whether or not the rights of election existing under the former practice were substantive or procedural, because we believe that Rule 12(b) preserves these rights of election. Thus, the rule requires a defendant to assert every defense, in law or fact, in the responsive pleading following the complaint, except that it permits "at the option of the pleader" certain defenses numbered (1) through (7) to be made by motion without the necessity of answering to the merits. 2 *Moore's Federal Practice*, § 12.03, p. 2219. As we have pointed out, defenses numbered (1) through (7) under the former practice would have been raised by pleadings other than the general issue, or in modern terminology, an answer to the merits. In point of fact, we are concerned solely with defense numbered (4), insufficiency of process, which under the former practice would have been raised by special appearance.

In our view, Rule 12(b) has done little more in this respect than to change the name of the procedural step required to attack sufficiency of the process. The right to do so, in advance of appearing and answering to the merits, has been

preserved by the rule. We think that a motion to dismiss on the ground of defense numbered (4) is the modern equivalent of the former practice of appearing specially for the purpose of moving to quash the attachment. The modern motion to dismiss upon such ground is no more a submission to personal jurisdiction than was the former special appearance. By thus permitting an attack upon the attachment in advance of submission to personal jurisdiction, the first election available to non-resident defendants in foreign attachment proceedings has been preserved.

The second election available to non-resident defendants is likewise preserved. It will be recalled that this election was to appear generally, thus submitting to personal jurisdiction. Rule 12(b) would permit the election of this option by the filing of an answer to the merits of the complaint, which is the equivalent of the former practice of appearing generally.

The third election available to non-resident defendants under the former practice was to attack the validity of the seizure and, even if successful, nevertheless, appear generally in the action and defend it on its merits. Formerly, this would have required two successive procedural steps, but under Rule 12(b) these may now be combined by joining in an answer to the merits an affirmative defense based on the invalidity of the attachment. It cannot be said that this third election is of no practical concern to defendants. The circumstances surrounding an action might well induce a non-resident to be willing to try his case in a Delaware court if he could obtain the release of his property from the seizure. A case that comes readily to mind is the one in which property with a value many times over the total value of the claim asserted has been seized. Witness also the case of a resident whose property has been seized upon the theory that he is a non-resident, but who, since he is subject to service of the ordinary process of summons, might well conclude that his best interests lay in defending to the merits and obtaining a release of his property illegally seized. *Cf. Carlson v. District Court*, 116 *Colo.* 330, 180 *P.* 2d 525, 526.

 Finally, as to the fourth election available to defendants, that is, to let the matter proceed to default judgment, it is clear that in a case where the defendant has unsuccessfully attacked the validity of the process, the rule must be so construed as to preserve to him his right to refuse to submit to personal jurisdiction. This cannot be preserved unless the attack be required to be made by motion, since, if made in an answer to the merits, there is no method provided in the rule to evidence defendant's election to default.

We think Rule 12(b), if construed as we have indicated, also preserves for plaintiffs in foreign attachment the right to know at all stages of the proceeding just what course the defendant proposes to follow. This, we think, would be denied plaintiffs if the construction of the rule urged by Canaday is approved. Under some circumstances this knowledge can be of great importance to the plaintiff for whose benefit the remedy of foreign attachment was created, since forewarning of a defective seizure might enable him to cure the defect by the issuance of an alias writ, and, likewise, a general appearance, even though coupled with a successful attack on the validity of the seizure, might give the plaintiff all he really seeks, *viz.*, personal jurisdiction over the non-resident. It could, under some circumstances, be wholly immaterial to the plaintiff whether or not the seizure is valid. He may be solely interested in obtaining ultimately a valid personal judgment, and thus be willing to forego the security of a lien in return for an appearance by the defendant.

 We think that the foregoing construction of Rule 12 (b) provides for the continuance of the fundamentals of the former practice in foreign attachment. Whether or not the rights of election under the former practice be considered matters of substance or of procedure is immaterial since, if Rule 12(b) is fairly open to a construction which continues the fundamentals of the former statutory procedure, we think we are in duty bound to give it that construction, particularly when, as is the case, that construction does not do violence to the underlying purpose of Rule 12(b).

That the problem presented by the circumstances of this cause requires a construction of Rule 12(b) in its application to foreign attachment proceedings is impliedly admitted by an argument made by Canaday. He argues that his answer to the merits coupled with an attack upon the sufficiency of the process, which sought to coerce his submission to jurisdiction, in effect is an appearance, or is not an appearance, depending upon the ultimate ruling upon the sufficiency of the process. Putting aside consideration of the dilemma the plaintiff would thus find himself facing, it is apparent that Canaday tacitly concedes that an appearance of some sort has been entered. The nature of the appearance, under Canaday's theory, would appear to be conditional—that is, it would be a submission to jurisdiction in the event the attachment is upheld, or, in the event the attachment is ruled to be invalid, it would be in the nature of a special appearance. We think the argument flies in the face of the abolition of the distinction between appearances, and is a tacit admission that Rule 12(b) was not written with the conscious intent of fitting the foreign attachment proceeding within its framework. The specific question before us now could not have been in the minds of the drafters of the rule.

In any event, we think Rule 12(b) must be construed so that it governs procedure in foreign attachment. This, we have done. It is, of course, obvious that it would have been a relatively simple matter to have provided specifically in the rule some means by which a defendant could have proceeded in the manner in which Canaday elected to proceed, and at the same time have evidenced his election not to submit to personal jurisdiction, but the plain fact is that no such means have been provided. Accordingly, it follows, since the rule governs, that it must be adapted to fit a type of action differing basically from an action in which jurisdiction over a defendant is sought to be obtained by the service of a summons, and that that adaptation must preserve the fundamentals of our statutory foreign attachment procedure.

A simple and workable interpretation of Rule 12(b), as related to foreign attachment, is that a motion attacking the seizure is the equivalent of a special appearance under the old practice. The defendant elects thereby not to submit to personal jurisdiction. An answer to the merits, whether or not including an attack on the process, is the equivalent of a general appearance under the old practice and is a submission to personal jurisdiction.

This conclusion does not contravene the provision of the rule that an answer to the merits does not waive the special defenses permitted to be made by motion. Thus, by answering to the merits and submitting to jurisdiction the defendant does not waive his attack on the attachment. On the contrary, if the attachment is bad his property will be released.

We emphasize again the essential and important difference in effect of an attack on a personal summons and an attack on the validity of mesne attachment. In the first case, if the summons is upheld, the defendant is "in" for all purposes, whether he likes it or not. In the second case, he is not "in", and he cannot be compelled to come in against his will. From this difference in the two forms of action flow the consequences we have above analyzed.

We think, therefore, that by answering to the merits of the complaint, Canaday has submitted himself to *in personam* jurisdiction of the Superior Court.

The petition for a writ of prohibition, accordingly, will be dismissed. Counsel for Brainard will submit an order.

### On Petition for Reargument

Following the filing of the main opinion Canaday petitioned for reargument. We have considered the petition and think it desirable to file a supplemental opinion to clarify several matters which seem to have occasioned misunderstanding.

Canaday criticizes our statement to the effect that the "only foundation" of jurisdiction in an action begun by summons is a

valid writ, on the ground that Rules 5·(aa1) and 12(b) of the Superior Court, *Del. C. Ann.* permit a voluntary submission to jurisdiction through the entry of an appearance, or by filing an answer to the merits in advance of service of the writ. This being so, it is urged that the Federal decisions cited in the main opinion are not distinguishable.

The argument is in reality a criticism of language used in the opinion. Admittedly, the language could have been more precise. However, we were discussing only the resistance by a defendant to personal jurisdiction by an attack upon the validity of the process. If that attack is successfully maintained the defendant is "safely out of Court" since he has not waived the defect. Necessarily there is a difference in actions commenced by foreign attachment for no jurisdiction over the person can ever be obtained solely from the validity of the writ. This is the distinction made by the opinion. We still are of the view that the distinction is sound.

Canaday states we inadvertently overlooked *Schaefer v. Hessinger, D. C.*, 16 *F. R. D.* 586, and *C. S. Foreman Co. v. H. B. Zachry Co., D. C.*, 127 *F. Supp.* 901, cited by him in his reply brief. The *Shaefer* case was an attempt to use mesne attachment in a Federal court, and was dismissed for failure to obtain personal service over the defendant. It obviously is not in point.

The *Foreman Co.* case was an attachment suit commenced in a state court by garnishee proceedings and service by registered mail. Upon removal to the Federal court both the defendant and garnishee appeared specially to attack the attachment and service. The motions were denied. 122 *F. Supp.* 859. Thereupon, the garnishee moved to dissolve the attachment on the ground that plaintiff had not filed the bond required by the Missouri Statute, § 521.050, V. A. M. S., upon the entry by the defendant of a general appearance, which failure under the statute dissolved the attachment as of course. It was held that only the defendant could move to dissolve the attachment, that it was not dissolved, and that by filing an answer to the merits

the defendant had not consented to jurisdiction. We have difficulty in following the reasoning of the court. Although the attachment was sustained, it was apparently held that the defendant had not submitted to personal jurisdiction despite its answer to the merits. If, after an attachment is sustained an answer to the merits does not evidence submission to jurisdiction, what then would evidence such submission? The court does not state what would be evidence of submission. It is clear to us from the opinion that the court had no appreciation of the necessity in foreign attachment proceedings for the defendant to make an election to default, or to appear and defend. In any event, we decline to accept the decision as a reason to change the result reached by us.

Canaday asserts that our conclusion that his two affirmative defenses in reality raised the same question—the sufficiency of the process of foreign attachment—was erroneous. We think, on re-consideration, that it would have been more precise to have stated directly that Canaday's second affirmative defense, *viz.*, that the Superior Court had acquired no personal jurisdiction over him, was without any basis whatsoever, since there was no process in existence which, of itself, sought to obtain personal jurisdiction over him. The only process of any kind open to attack was· the writ of attachment which, as we pointed out, could, of itself, never be the basis of personal jurisdiction.

Canaday attempts to explain his use of the second affirmative defense by saying that without it he might have been held to have submitted to personal jurisdiction. This is an attempt on his part to supply a deficiency in the rule—the lack of a method to evidence a submission or refusal to submit to personal jurisdiction. It is, however, a distortion of defense numbered (5), which is designed to raise the question of the insufficiency of service of process—that is, whether by the service of process the court has obtained jurisdiction over the person of the defendant. Canaday's argument is an ingenious attempt to make the rule apply to foreign attachment proceedings, but

serves merely to point up the deficiency in the rule in that respect.

One other matter deserves comment. In the main opinion we referred to the right of a plaintiff to know what election the defendant was making at the time he filed his pleading, and that this right was important because of the possibility, after timely warning, of curing a faulty seizure of property through the issuance of alias writs of attachment. Canaday attacks the soundness of this observation by reason of Rule 4(a, g), which provide that all writs shall be returnable 20 days after their issuance, and that no alias or pluries writ shall issue except within 20 days after the return day of the preceding writ. From these provisions Canaday argues that since a defendant under 10 *Del. C.* § 3531 is not required to appear until the end of the second term following the issuance of the attachment, the right of a plaintiff to be warned of a faulty seizure will be of no aid to him since the right to issue an alias writ will have long since expired.

Our reference to the use of an alias writ by a plaintiff was merely an illustration. The conclusion reached in the opinion did not depend upon the illustration. However, it is at least doubtful that Rule 4(a, g) has the effect Canaday says it has. Rule 4(a) specifies that alias writs must be issued within 20 days after the return day of the writ. Canaday determines the return day of the writ as 20 days after its issuance by reference to Rule 4(g). It is this conclusion which is doubtful.

10 *Del. C.* § 3531 provides that writs of foreign attachment shall be issued and governed by the same procedure applicable to writs of domestic attachment. With respect to writs of domestic attachment 10 *Del. C.* § 3510 directs that the property of the defendant be attached so that "he be and appear at the next Superior Court", and by 10 *Del. C.* § 3530 it is provided that no second writ of attachment shall be issued "unless the first shall not be executed, or shall be quashed or dissolved by the court, or discontinued by the plaintiff". It seems clear that the

statutes provide for the procedure to be followed in cases of domestic and foreign attachment, and probably provide by inference at least for the time of return of the writs and the issuance of alias writs. If this is correct, then Canaday's interpretation of Rule 4(a, g) would mean that the rule overrides the statutory provisions. It appears at least doubtful that such would be the case, for it would mean that a defendant without defaulting would be permitted to claim the benefit of the statutory time for entering his appearance at the second term, and at the same time deny to plaintiff, by reason of the rule, the right to proceed within the statutory times. It would seem that any overriding effect the rules have should be equally applicable to a defendant, which would possibly mean that his appearance time would be shortened under Rule 12 to 20 days after service of the writ of foreign attachment. We assume Canaday would strenuously object to an abrogation of the second-term appearance provision. These considerations throw considerable doubt on Canaday's contention, but since it is not necessary to do so, we express no opinion upon the point.

The other matters in the petition are in effect a reargument of what has already been argued, or a complaint that we have adopted an interpretation of the rule not suggested by counsel or by the court below. Our distinct recollection, however, is that the various points were mentioned and discussed at the argument, and Canaday's brief deals with the necessity of allowing a defendant the election to default after the attachment has been upheld.

We find nothing in the petition for reargument to lead us to believe that further argument might produce a different result. Admittedly, no solution to the problem of adapting the rule to fit a situation not foreseen by the drafters will be entirely free from criticism, but we think the result reached provides a simple and workable method for the application of the rule to foreign attachment proceedings.

The petition for reargument is denied.