**WILMINGTON TRUST COMPANY, a Delaware Corporation, Plaintiff,**

v.

**Virginia J. BARRY et al., Defendants.**

Superior Court of Delaware, New Castle.

May 12, 1975.

George Tyler Coulson, Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff.

Victor F. Battaglia, Biggs & Battaglia, Wilmington, for Virginia J. Barry.

## OPINION

O'HARA, Judge.

Plaintiff sues for conversion of a sum of money allegedly obtained by means of unauthorized endorsements of checks issued to the order of Sidney Scott and/or Jane M. Scott. The plaintiff, the alleged assignee of the claims of the Scotts, not being able to obtain service of process upon defendant Barry in the State of Delaware, caused a writ of foreign attachment to issue, pursuant to 10 Del.C. § 3506, for purposes of seizing all interest of defendant Barry in the proceeds of a health insurance policy issued to Josiah Marvel Scott, son of the aforesaid Sidney and Jane M. Scott. Defendant Barry answered plaintiff's complaint in August, 1973. Subsequently, in June, 1974, she filed a motion to quash the writ of foreign attachment, asserting that the proceeds of the insurance policy are exempt from foreign attachment pursuant to 18 Del.C. § 2726 and 18 Del.C. § 903.[1] Plaintiff, in response, argues that defendant's motion has not been timely filed and that the aforementioned statutes are inapplicable if, as alleged, it is demonstrated that the premiums on the insurance policy were paid with converted funds.

 The Court concludes that the insurance policy at issue herein is within the purview of the exemption from the claims of creditors granted by 18 Del.C. § 2726. Plaintiff construes the statute (§ 2726) as exempting only such health insurance contracts as are supplemental to life insurance or annuity contracts. The Court believes such an interpretation, which is not supported by any rules of statutory construc-

tion, is erroneous. Exemption statutes of this type are in force in nearly every state, and are accorded a liberal construction by the courts in order to afford the exemption wherever this is reasonably possible. Vance, Insurance, 3rd Ed., § 124; Doethlaff v. Penn Mut. Life Ins. Co., 313 U.S. 579, 61 S.Ct. 1100, 85 L.Ed. 1536 (1941); 22 Appleman, Insurance Law and Practice, § 14581. A fair reading of 18 Del.C. § 2726, let alone a liberal construction thereof, leads the Court to conclude that all contracts of health insurance, as that term is further defined by § 903, are within its parameters.

 More troublesome, however, is plaintiff's contention that, assuming the insurance policy in issue is within the purview of the exemption statute, the defendant's payment of the premiums with funds obtained by fraud renders the statutory exemption inapplicable. The Court is sympathetic to the argument that the Legislature would hardly have intended to exempt the proceeds of policies wrongfully and fraudulently obtained with misappropriated funds. Furthermore, there is an abundance of authority which supports the proposition that an exemption statute should not be invoked to protect the proceeds of a policy obtained with embezzled or converted funds. Mullikin v. Pedersen, 161 Neb. 22, 71 N.W.2d 485 (1955); Truelsch v. Northwestern Mutual Life Ins. Co., 186 Wis. 239, 202 N.W. 352 (1925); Jansen v. Tyler, 151 Or. 268, 47 P.2d 969 (1935), mod. on other grounds, 49 P.2d 372 (1935); McConnell v. Henochsberg, 11 Tenn.App. 176 (1929); Massachusetts Bonding & Ins. Co. v. Josselyn, 224 Mich. 159, 194 N.W. 548 (1923); See generally

---

1. 18 Del.C. § 2726 provides:

"Except as may otherwise be expressly provided by the policy or contract, the proceeds or avails of all contracts of health insurance and of provisions providing benefits on account of the insured's disability which are supplemental to life insurance or annuity contracts heretofore or hereafter effected shall be exempt from all liability for any debt of the insured, and from any debt of the beneficiary

existing at the time the proceeds are made available for his use."

18 Del.C. § 903 provides:

"Health insurance is insurance of human beings against bodily injury, disablement or death by accident or accidental means, or the expense thereof, or against disablement or expense resulting from sickness, and every insurance appertaining thereto."

Anno. 38 A.L.R. 930; Anno. 24 A.L.R.2d 672; 22 Appleman Insurance Law and Practice, § 14585; 5 Couch on Insurance, § 29.144; Vance, Insurance, 3rd Ed., § 125.

However, a careful reading of the aforementioned cases discloses that, in every instance, the *equitable* power of a court to impose a constructive trust or a resulting trust[2] upon insurance proceeds, otherwise exempt, warranted the circumvention of a statute such as 18 Del.C. § 2726. The Court has not found, nor has its attention been directed to, any precedent or commentary which would justify a common law court's disregarding the provisions of an exemption statute, otherwise applicable, under circumstances as are alleged by the plaintiff herein. Insofar as this Court lacks equitable power to impose a trust on the insurance proceeds seized by the writ of foreign attachment, it would be required to insert into the exemption statute an exception not provided for therein, explicitly or implicitly, in order to conclude that said statute is not operative in this case. Unless a legislative intent to have a statute read in a certain manner is ascertainable from other parts of a statute, courts proceed with great caution in supplying omissions therein. Dooley v. Rhodes, Del. Super., 11 Terry 447, 134 A.2d 260 (1957), aff'd., 11 Terry 479, 135 A.2d 114 (1957). The proceeds of the health insurance policy issued by the American Home Assurance Company to the late Josiah Marvel Scott are, therefore, exempt from claims of creditors, by means of foreign attachment or otherwise, by virtue of 18 Del.C. § 2726 and 18 Del.C. § 903.

█ Plaintiff's final argument is that defendant, by answering the complaint and thereby entering a general appearance, has submitted herself to the jurisdiction of this Court and, therefore, is not entitled to pursue a motion to quash at this time. Curiously, plaintiff relies on Kaiser-Frazer

Corp. v. Eaton, Del.Super., 7 Terry 509, 85 A.2d 752 (1952), in order to suggest that defendant's motion is premature and upon Canaday v. Superior Court, Del.Super., 10 Terry 456, 119 A.2d 347 (1955) in order to suggest that defendant's motion should have been proffered earlier, i. e., prior to or contemporaneous with her answer. The Court finds neither case precisely on point.

Defendant herein acknowledges the jurisdiction of this Court. She did not come before this Court to challenge its jurisdiction, unlike the situation in *Eaton*, where this Court, considering the jurisdictional challenge to be the only issue properly before it, refused to consider, upon motion to quash a foreign attachment, whether certain property, rights and credits could be effectively garnished.

In *Canaday*, the Supreme Court stated that Superior Court Rule 12(b)(4) "is the modern equivalent of the former practice of appearing specially for the purpose of moving to quash the [foreign] attachment". Plaintiff contends, therefore, that defendant's motion, which was not filed prior to or with her responsive pleading, has been waived. Superior Court Rule 12(b); Superior Court Rule 12(h). In *Canaday*, however, the defendant's challenge to the attachment was primarily based upon non-compliance of the writ with the foreign attachment statute itself, i. e., a matter of form. An objection under Rule 12(b)(4) is directed to the form of the process, i. e., "non-compliance with Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the" process. See 5 Wright and Miller, Federal Practice and Procedure, § 1353. In this case, defendant's motion to quash is predicated upon a specific exemption found in 18 Del.C. § 2726. It is not directed to a matter of form, and, therefore, is not within the purview of a 12(b)(4) motion. Hence, the time limitations for filing a 12(b) motion

---

2. In a few cases, *equity* courts have held that one whose funds have been wrongfully appropriated to pay life insurance premiums is entitled to a *lien* against the proceeds thereof.

See e.g. Board of Public Instruction v. Mathis, 132 Fla. 289, 181 So. 147 (1938); Hubbard v. Stapp, 32 Ill.App. 541 (1889); Anno. 24 A.L.R.2d 672, 679–80.

are not applicable under the circumstances here present.

The purpose of a foreign attachment proceeding is to coerce a non-resident defendant who owns property within the State to submit himself to personal jurisdiction upon pain of forfeiture of his seized property. Canaday v. Superior Court, supra; First Western Financial Corporation v. Neumeyer, Del.Super., 240 A.2d 579 (1968). This purpose has been accomplished in the instant case as defendant Barry has submitted to personal jurisdiction by virtue of answering the plaintiff's complaint. Superior Court Rule 5(aa)(1). Where exempt property is involved and the principal debtor is himself before the Court, it is the duty of the debtor, not the garnishee, to promptly claim an exemption. Shinn on Attachment and Garnishment, § 629, § 668.

For the reasons herein stated, the Court concludes that defendant Barry's motion to quash the writ of attachment should be granted.

It is so ordered.