John M. SMITH, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 237, 1993.

Supreme Court of Delaware.

Submitted: Aug. 31, 1994.

Decided: Sept. 23, 1994.

---

David W. Jones, Blades, Pryor & Benson, P.A., Dover, for appellant.

Gary A. Myers, Dept. of Justice, Georgetown, for appellee.

Before VEASEY, C.J., WALSH and HOLLAND, JJ.

VEASEY, Chief Justice:

In this appeal we consider whether the Superior Court erred in admitting against defendant below-appellant John M. Smith ("Smith") testimony of Jeanine Weedon ("Mrs. Weedon"), the wife of codefendant below William Weedon, Jr. ("Weedon"). In relevant part, the testimony recounted a conversation Weedon had with Mrs. Weedon on October 10, 1992, that implicated Smith in the subject offenses. For the reasons below, we hold that the Superior Court committed plain error by admitting the pertinent testimony and therefore **REVERSE** Smith's convictions and **REMAND** the case to the Superior Court for a new trial.

## I. FACTS

In the early morning hours of October 10, 1992, Ronald Ward ("Ward") was attacked while sleeping in his house in Lewes, Dela-

ware. Ward did not see who attacked him. As a result of the attack, Ward received severe injuries to his face, skull, arm and fingers.

Later that morning, Officer Gilbert Clampitt ("Clampitt"), of the Lewes police, stopped a blue Chevrolet Nova for a speeding violation. Smith and Weedon identified themselves, respectively, as the driver and passenger/owner of the vehicle. Located inside the vehicle were two baseball bats. Clampitt ticketed Smith for speeding and allowed the two to proceed.

The police learned of Weedon's and Smith's involvement in Ward's assault primarily through a phone call Mrs. Weedon placed to the Delaware State Police. In that call, she recounted certain events which occurred in early October, 1992, which events are summarized as follows: between 3:00 and 5:00 p.m. on October 9, Weedon arrived at the Weedon residence; Mrs. Weedon apprised Weedon of unfortunate developments relating to the sexual molestation of their children; upon learning from Mrs. Weedon of an accusation by his son Billy that Ward molested him, Weedon declared that he would kill Ward and stormed off; Weedon returned to the Weedon residence between 10:00 and 10:30 a.m., October 10, where he told Mrs. Weedon that he and "John" (later identified as Smith) had gone to Ward's house and beaten Ward with two baseball bats; he continued that "John [Smith] hit him in the head like he was hitting a baseball."

Upon Mrs. Weedon's recitation of the above events, the police pieced together what had occurred in the early hours of October 10, eventually leading to a five-count indictment of Weedon and Smith on January 11, 1993. A joint jury trial commenced on April 26, 1993, in which Smith testified on his own behalf and presented an alibi defense. Weedon did not take the stand. Mrs. Weedon testified as to the events of October 9 and 10, including a recounting of her October 10 conversation with Weedon. The trial ended on May 4, 1993, with the jury finding Weedon and Smith guilty of Attempted Murder

First Degree,[1] Burglary First Degree,[2] Possession of a Deadly Weapon During Commission of a Felony[3] and Conspiracy First Degree.[4] Smith was sentenced on June 18, 1993, to a total incarceration period of 17 years. He filed a timely appeal.[5]

Smith originally raised two contentions on appeal. First, he argued that admission as to Smith of Mrs. Weedon's testimony regarding Weedon's October 10 statement to her violated *Bruton*[6] and the Confrontation Clause.[7] Second, Smith contended that the Superior Court erred in denying his timely motion for judgment of acquittal. This Court subsequently ordered supplemental briefing on whether Delaware should adopt the standard enunciated in *Williamson v. United States*, —— U.S. ——, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994), in defining the scope of D.R.E. 804(b)(3).

## II. ANALYSIS UNDER D.R.E. 804(b)(3)

■ Though conceding that he failed to object to the introduction of this evidence in the Superior Court, Smith argues that the court committed plain error in admitting portions of the October 10 conversation between Weedon and Mrs. Weedon that implicated him. He asserts that *Williamson* provides the more analytically sound approach to D.R.E. 804(b)(3) issues. The State initially notes that *Williamson* is only marginally involved because only those portions of Weedon's statement that used a plural, first-person pronoun and the component that directly inculpated Smith are at issue. The State contends that because *Williamson* was based on federal statutory analysis, this

Court is not bound by that decision and, further, that policy considerations favor rejection of *Williamson*. Premised on such rejection, the State concludes that Weedon's October 10 statement was admissible against Smith under D.R.E. 804(b)(3).[8]

D.R.E. 804(b)(3) only allows admission of truly self-inculpatory statements. That provision, which codifies the declaration-against-interest exception to the hearsay rule, allows admission of the following:

> A statement which was, at the time of its making, so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true.

D.R.E. 804(b)(3). In *Williamson v. United States*, —— U.S. ——, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994) (O'Connor, J., majority), the United States Supreme Court clarified the scope of statements admissible under Federal Rule of Evidence 804(b)(3) ("F.R.E. 804(b)(3)"), —— U.S. at ——–——, 114 S.Ct. at 2433–37, the federal counterpart to D.R.E. 804(b)(3). In that case, a declarant ("Harris") during a custodial interrogation made a confession that incriminated himself as well as the defendant ("Williamson"). Subsequently, Harris recanted parts of his confession as fabricated but made a second confession. The second confession still incriminated himself and Williamson, though under a different set of circumstances. At William-

---

1. 11 *Del.C.* § 636(a)(1).

2. *Id.* § 826(1).

3. *Id.* § 1447(a).

4. *Id.* § 513(1). The fifth count, Criminal Mischief, *id.* § 811(a)(1), was nolle prossed by the State prior to trial.

5. In Weedon's companion appeal, this Court, in an opinion issued contemporaneously herewith, affirmed Weedon's conviction. *Weedon v. State*, Del.Supr., Veasey, C.J. (1994) (OPINION), 647 A.2d 1078.

6. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

7. *U.S. Const.*, amend. VI; *Del. Const.*, art. I, § 7 (1897).

8. As an initial matter, this Court is empowered to review Smith's argument even though he failed to object to admission against him of the October 10 conversation. Where a party fails to object to introduction of evidence in the Superior Court, the issue is whether plain error mandates review in the interests of justice. Supr.Ct.R. 8; *Robertson v. State*, Del.Supr. 596 A.2d 1345, 1355 (1991); *Weber v. State*, Del.Supr., 457 A.2d 674, 680 n. 7 (1983). The Court finds that the Superior Court committed plain error, requiring review in the interests of justice.

son's trial, because Harris (who was called as a witness under use immunity) refused to testify, the court allowed the interrogating officer to recount Harris' second confession which inculpated both Harris (the declarant) and Williamson (the defendant). *Id.* at ———–——, 114 S.Ct. at 2433–34.

The issue before the Court was whether the confession should be dissected to its self-inculpatory and non-self-inculpatory components. Relying on the denotative meaning of "statement" in F.R.E. 804(b)(3) and the underlying basis for admissibility of such statements—trustworthiness attributable to declarations against interest—the Court explicated that F.R.E. 804(b)(3) renders admissible only those components of a declarant's confession that are truly self-inculpatory as to the declarant in light of all the surrounding circumstances. *Id.* at ———–——, 114 S.Ct. at 2436–37.[9]

▮▮▮ The policy behind the declaration-against-interest exception is that self-inculpatory statements are inherently reliable and trustworthy. *Williamson,* —— U.S. at ——, 114 S.Ct. at 2435 ("reasonable people, even reasonable people who are not especially honest, tend not to make self-incriminatory statements unless they believe them to be true"); *United States v. Matthews,* 2d Cir., 20 F.3d 538, 545 (1994) ("people do not ordinarily make statements damaging to themselves unless they are true") (quotation omitted). There is no clear policy basis, however, for attributing equal guarantees of trustworthiness to declarations appurtenant to the self-incriminatory ones, particularly those that are self-serving. *Williamson,* —— U.S. at ——, 114 S.Ct. at 2435; *Lee v. Illinois,* 476 U.S. 530, 541, 106 S.Ct. 2056, 2062, 90 L.Ed.2d 514 (1986); *Matthews,* 20 F.3d at 545. Justice O'Connor, speaking for the majority of the Supreme Court in *Williamson,* analyzed the rule as follows:

> Rule 804(b)(3) is founded on the common-sense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory

statements unless they believe them to be true. This notion simply does not extend to the broader definition of "statement." The fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts. One of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature.

\* \* \* \* \* \*

Self-exculpatory statements are exactly the ones which people are most likely to make even when they are false; and mere proximity to other, self-inculpatory, statements does not increase the plausibility of the self-exculpatory statements.

\* \* \* \* \* \*

Nothing in the text of Rule 804(b)(3) or the general theory of the hearsay Rules suggests that admissibility should turn on whether a statement is collateral to a self-inculpatory statement. The fact that a statement is self-inculpatory does make it more reliable; but the fact that a statement is collateral to a self-inculpatory statement says nothing at all about the collateral statement's reliability. We see no reason why collateral statements, even ones that are neutral as to interest ... should be treated any differently from other hearsay statements that are generally excluded.

\* \* \* \* \* \*

In our view, the most faithful reading of Rule 804(b)(3) is that it does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory. The district court may not just assume for purposes of Rule 804(b)(3) that a statement is self-inculpatory because it is part of a fuller confession, and this is especially true when the statement implicates someone else.

---

9. *Cf. Hooks v. State,* Del.Supr., 416 A.2d 189, 201 (1980) (excluding collateral, self-serving statement that was purportedly part of more general, admitted confession); *but cf. United States v. Matthews,* 2d Cir., 20 F.3d 538, 546 (1994) (those portions of a declaration against interest that have "sufficient 'particularized guarantees of trustworthiness'" do not violate the Confrontation Clause and are therefore admissible) (quotation omitted).

*Williamson,* —— U.S. at ——, 114 S.Ct. at 2435.

██ Although not bound by the Supreme Court's interpretation of F.R.E. 804(b)(3) in construing our identical D.R.E. 804(b)(3), we have repeatedly noted that construction of identical rules by the federal judiciary is accorded "great persuasive weight" in our interpretation of the Delaware counterparts. *See Hoffman v. Cohen,* Del.Supr., 538 A.2d 1096, 1098 (1988) (quoting *Canaday v. Superior Court,* Supr., 49 Del. 456, 119 A.2d 347, 352 (1956)).[10] We find Justice O'Connor's reasoning to be persuasive and we therefore adopt it in construing the Delaware rule.[11]

 As the Court in *Williamson* held, there is no theoretical basis for the admission of neutral, collateral statements. Hearsay statements are generally inadmissible. D.R.E. 802.[12] A hearsay declaration is admissible, usually under a specific exception, only where the declaration has some theoretical basis making it inherently trustworthy. *See Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980); D.R.E. 803 (listing hearsay exceptions where availability of declarant is immaterial); D.R.E. 804 (listing hearsay exceptions requiring unavailability of declarant). Thus, absent some special indicia of reliability and trustworthiness, hearsay statements are inadmissible. Neutral, collateral statements enjoy no such guarantees of reliability and trustworthiness. *Williamson,* —— U.S. at ——, 114 S.Ct. at 2435. Non-self-incriminatory components of a declaration purportedly falling within D.R.E. 804(b)(3) are presump-

tively inadmissible hearsay because they cannot claim any special guarantees of reliability and trustworthiness.[13] This result is consistent with Delaware's traditional approach of viewing constitutional protection of confrontation accorded the accused by the United States Constitution as a floor rather than a ceiling. *See, e.g., Bryan v. State,* Del.Supr., 571 A.2d 170, 176–77 (1990); *Hammond v. State,* Del.Supr., 569 A.2d 81, 86–87 (1989).

In the instant case, the Superior Court allowed Mrs. Weedon to testify to the entire conversation she had with Weedon on October 10, 1992. In that conversation, Weedon described his assault on Ward, inculpated himself and also inculpated Smith. Under the D.R.E. 804(b)(3) analysis set forth above, only those portions of Weedon's October 10 communication to Mrs. Weedon that were truly self-inculpatory as to Weedon under all the circumstances were admissible. The Superior Court committed plain error in not analyzing the October 10 communication to distill those portions that were truly self-inculpatory and admissible from those that were not.

## III. INAPPLICABILITY OF THE CO-CONSPIRATOR EXCEPTION

 The State's reliance on D.R.E. 801(d)(2)(E) is misplaced. That provision states in relevant part: "A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement made by a co-conspirator of a party during the course and in furtherance of the conspira-

10. *See also State v. Riviera,* Del.Super., 515 A.2d 182, 184 (1986) (where Delaware has not ruled on the scope of a term in an evidentiary rule, deference to interpretation accorded the term by federal and other states' case law is appropriate, though not binding).

11. As noted *infra* the Supreme Court did not predicate its opinion on the Confrontation Clause of the United States Constitution. Hence, we are not bound by any federal constitutional mandate emanating from *Williamson.*

12. That rule states: "Hearsay is not admissible except as provided by law or by these Rules." D.R.E. 802. Note that under D.R.E. 801(d)(2) a party defendant's own statement is not hearsay. Thus Weedon's statement to his wife implicating

himself is not hearsay as to him. Accordingly, it is admissible as to Weedon unless protected by the marital privilege. In *Weedon's* companion case decided today, we have held that the marital privilege was waived, the statement was admissible as to Weedon and his conviction was affirmed. *Weedon v. State,* Del.Supr., Veasey, C.J. (1994) (OPINION), 647 A.2d 1078.

13. Also, the State's argument that the Court's Special Advisory Committee's failure to adopt a sentence that codified the *Bruton* rule into D.R.E. 804(b)(3), D.R.E. 804(b)(3) cmt., proves too much. Though analysis under *Bruton* and D.R.E. 804(b)(3) can be coextensive, the *Bruton* sentence, had it been adopted, would not have been determinative here; its rejection provides even less guidance.

cy[.]" D.R.E. 801(d)(2)(E). To fall within the co-conspirator statement exclusion, the admitted statement must have been made during the course and in furtherance of the conspiracy. *Lloyd v. State,* Del.Supr., 534 A.2d 1262, 1264 (1987); *see also Lutwak v. United States,* 344 U.S. 604, 617, 73 S.Ct. 481, 489, 97 L.Ed. 593 (1953) (applying federal counterpart); *Krulewitch v. United States,* 336 U.S. 440, 442–43, 69 S.Ct. 716, 717–18, 93 L.Ed. 790 (1949) (same).[14] Duration of a conspiracy depends on the fact-specific scope of the original agreement, but generally a conspiracy terminates upon accomplishment of the principal objective unless specific evidence is introduced indicating that the scope of the original agreement included acts taken to conceal the criminal activity. *Lutwak,* 344 U.S. at 616, 73 S.Ct. at 488; *Krulewitch,* 336 U.S. at 442–43, 69 S.Ct. at 717–18. A declaration made by a co-conspirator after termination of the conspiracy is inadmissible under the co-conspirator hearsay exclusion against any co-conspirator other than the declarant. *Lutwak,* 344 U.S. at 617–18, 73 S.Ct. at 489–90; *Krulewitch,* 336 U.S. at 443, 69 S.Ct. at 718 (reversing conviction where post-conspiracy declaration improperly admitted under exception).

In the instant case, the State does not specify when the conspiracy to assault Ward ended. There is nothing in the record requiring departure from the general rule that a conspiracy terminates upon the accomplishment (successfully or unsuccessfully) of the primary object, here the assault on Ward.[15] Thus, the October 10 conversation does not fall within the ambit of the co-conspirator hearsay exclusion. *See* D.R.E. 801(d)(2)(E); *Lutwak,* 344 U.S. at 617–18, 73 S.Ct. at 489–

90; *Krulewitch,* 336 U.S. at 443, 69 S.Ct. at 718.

## IV. ANALYSIS UNDER THE CONFRONTATION CLAUSE

■ Smith contends that the Superior Court erred in admitting Mrs. Weedon's testimony regarding Weedon's October 10 statement because such admission ran afoul of *Bruton* and the Confrontation Clause. The State retorts that *Bruton* is unavailing because its rule is predicated on inadmissibility of the subject statement against Smith. The State continues that the precondition is not met here because the October 10 statement was admissible under D.R.E. 804(b)(3) or D.R.E. 801(d)(2)(E). This begs the question and is incorrect as a matter of law.

■ In a joint trial, admission of a codefendant's confession that also incriminates the defendant violates the Confrontation Clause, *Bruton v. United States,* 391 U.S. 123, 126, 88 S.Ct. 1620, 1622, 20 L.Ed.2d 476 (1968), unless the confession is sufficiently redacted to exclude the possibility that a jury will use it against the defendant, *Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987); *Blodgett v. State,* Del.Supr., 310 A.2d 628, 629 (1973) (analysis under federal Confrontation Clause).[16] The instant case implicates *Bruton* because it involves a joint trial of codefendants where the inculpatory statement of one defendant (Weedon) was used against both Weedon and the codefendant (Smith). We have held that those statements of Weedon within the October 10 conversation with Mrs. Weedon that were not truly self-incul-

---

**14.** The Court has earlier noted the parallel between D.R.E. 801(d)(2)(E) and its federal counterpart. *Lloyd,* 534 A.2d at 1264.

**15.** Even if the State had produced evidence expanding the conspiracy to include concealment of the Ward assault, the subject statement involved disclosing the crime and thus would not be in furtherance of this collateral sub-conspiracy.

**16.** *See also United States v. Enriquez–Estrada,* 9th Cir., 999 F.2d 1355, 1359 (1993) (redaction sufficient protection); *United States v. Macko,* 11th Cir., 994 F.2d 1526, 1536 (1993) (same); *United States v. Chatman,* 10th Cir., 994 F.2d 1510,

1513, *cert. denied,* — U.S. —, 114 S.Ct. 230, 126 L.Ed.2d 185 (1993) (same); *United States v. Strickland,* 7th Cir., 935 F.2d 822, 826 (1991), *cert. denied,* — U.S. —, 112 S.Ct. 884, 116 L.Ed.2d 787 (1992) (same); *United States v. Benitez,* 2d Cir., 920 F.2d 1080, 1087 (1990) (same); *United States v. Espinoza–Seanez,* 5th Cir., 862 F.2d 526, 534 (1988) (same); *but see United States v. Payne,* 8th Cir., 923 F.2d 595, 597, *cert. denied,* 501 U.S. 1219, 111 S.Ct. 2830, 115 L.Ed.2d 1000 (1991) (redaction not sufficient to protect defendant's confrontation clause rights); *United States v. Pickett,* 6th Cir., 746 F.2d 1129, 1132–33 (1984), *cert. denied,* 469 U.S. 1226, 105 S.Ct. 1222, 84 L.Ed.2d 362 (1985) (same).

patory did not fall within the ambit of D.R.E. 804(b)(3). *See* Part II, *supra.*[17]

■■■ The majority in *Williamson* predicated its decision solely on its interpretation of F.R.E. 804(b)(3) and did not base its decision under the Confrontation Clause.[18] That clause states in relevant part: "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." *U.S. Const.,* amend. VI. Hearsay statements, however, may be admissible notwithstanding the Confrontation Clause if (1) the declarant is unavailable to testify and (2) the statement "bears adequate indicia of reliability." *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980) (quoting *Mancusi v. Stubbs,* 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972)). A declarant who invokes the Fifth Amendment testimonial privilege against self-incrimination is "unavailable" for Confrontation Clause purposes. *See* D.R.E. 804(a)(1) & (2); *see also United States v. Bakhtiar,* 2d Cir., 994 F.2d 970, 977, *cert. denied,* —— U.S. ——, 114 S.Ct. 554, 126 L.Ed.2d 455 (1993); *State v. Payne,* Conn. Supr., 219 Conn. 93, 591 A.2d 1246, 1258 (1991); *State v. Smith,* Me.Supr., 415 A.2d 553, 559 (1980); *State v. Grossi,* R.I.Supr., 588 A.2d 607, 608 (1991). A statement may be sufficiently reliable if it falls either within a firmly rooted hearsay exception or if it otherwise has "particularized guarantees of trustworthiness." *Lee,* 476 U.S. at 543, 106 S.Ct. at 2063; *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539 (footnote omitted).

The United States Supreme Court has left open the question of whether the declaration-against-interest exception is "firmly rooted." *See Williamson,* —— U.S. at ——, 114 S.Ct. at 2437. The lower federal circuits have split on the issue. *Compare United States v.*

*York,* 7th Cir., 933 F.2d 1343, 1363–64, *cert. denied,* —— U.S. ——, 112 S.Ct. 321, 116 L.Ed.2d 262 (1991) (firmly rooted); *United States v. Seeley,* 1st Cir., 892 F.2d 1, 2 (1989) (same) *with United States v. Flores,* 5th Cir., 985 F.2d 770, 783 (1993) (not firmly rooted); *Olson v. Green,* 8th Cir., 668 F.2d 421, 428, *cert. denied,* 456 U.S. 1009, 102 S.Ct. 2303, 73 L.Ed.2d 1305 (1982) (same). This Court need not reach the issue, however, because as earlier discussed, *see* Part II, *supra,* we hold that portions of the larger October 10 narrative that were not truly self-inculpatory lacked sufficient indicia of reliability and trustworthiness irrespective of whether D.R.E. 804(b)(3) is a firmly rooted exception.

Given that Weedon's October 10 narrative does not fall within the declaration-against-interest hearsay exception, co-conspirator exclusion, or any other hearsay exception or exclusion, the Superior Court's admission of that statement against Smith constituted plain error under the Delaware Rules of Evidence. To permit the introduction of the evidence as to Smith squarely implicates the Confrontation Clause. *See Fuson v. Jago,* 6th Cir., 773 F.2d 55, 60–61 (1985), *cert. denied,* 478 U.S. 1020, 106 S.Ct. 3334, 92 L.Ed.2d 739 (1986) (interpreting Ohio Rule of Evidence 804(B)(3)). Accordingly, the interpretation of D.R.E. 804(b)(3) which we adopt today saves the constitutionality of the Rule since to construe D.R.E. 804(b)(3) to permit the introduction of the Weedon statement as to Smith would have violated his constitutional rights under the Sixth Amendment to the United States Constitution and Article I, § 7, of the Delaware Constitution.[19]

Furthermore, the Superior Court's error was not harmless. Upon a finding that a defendant's constitutional rights were violated, a reviewing court must "weigh the significance of the error against the strength of the

---

**17.** We have also held that the entire October 10 narrative was inadmissible under D.R.E. 801(d)(2)(E). *See* Part III, *supra.*

**18.** Justices O'Connor and Scalia expressly stated that Confrontation Clause analysis was not necessary in light of the Court's holding. *Id.* —— U.S. at ——, 114 S.Ct. at 2437.

**19.** Delaware's Confrontation Clause states in relevant part: "In all criminal prosecutions, the accused shall hath a right ... to meet the wit-

nesses in their examination face to face[.]" *Del. Const.,* art. I § 7 (1897). Although it is unnecessary for us to decide whether Smith's constitutional claim under the Delaware Confrontation Clause differs from his claim under the United States Constitution, the Court notes that the protection accorded an accused by that clause may be greater than its federal counterpart. *See Van Arsdall v. State,* Del.Supr., 524 A.2d 3, 7 n. 5 (1987).

untainted evidence of guilt to determine whether the error may have affected the judgment." *Van Arsdall v. State,* Del.Supr., 524 A.2d 3, 11 (1987) (reversal based on Confrontation Clause violation). Constitutional errors are of such magnitude that "reversal is required whenever the reviewing court 'cannot say that the error was harmless beyond a reasonable doubt.'" *Id.* (quoting *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)). In the instant case, there was no untainted direct evidence linking Smith to commission of the subject offenses. The only circumstantial evidence allowing for an inference of culpability was Clampitt's testimony that he stopped a car driven by Smith for speeding in the early morning hours of October 10 and saw two baseball bats in the car's compartment.[20] Given the paucity of untainted evidence against Smith, the gravity of Mrs. Weedon's testimony relating to portions of the October 10 conversation that inculpated Smith is palpable. Thus, the Court cannot say that the improper, wholesale admission of that conversation constituted error that was harmless beyond a reasonable doubt.[21]

We therefore **REVERSE** Smith's convictions and **REMAND** the case to the Superior Court for a new trial consistent with this opinion.

---

**20.** Also, Smith offered an alibi defense in which he essentially claimed he was not in Lewes, Delaware (where Ward was attacked) on October 10. His testimony, however, was contradicted by other witnesses.

**21.** The Court finds Smith's primary claim dispositive and thus need not decide Smith's second claim—that the Superior Court erred in denying his motion for judgment of acquittal.